**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

In re ELIZABETH MARIE BLANK,

<u>            Debtor.        </u>/

TOBY CROSS and ARTHUR LOPEZ,
individuals, on their own behalf and on
behalf of all others similarly situated,

            Plaintiffs,

      -against-

ELIZABETH MARIE BLANK

<u>            Defendant.     </u>/

Chapter 7
Bankruptcy No. 9:15-bk-07321-FMD

The Honorable Caryl E. Delano

**ADVERSARY COMPLAINT**

Adversary Proceeding No.

*ADVERSARY COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY AND
OBJECTION TO DEBTOR'S DISCHARGE PURSUANT TO SECTIONS 523 AND 727 OF
THE BANKRUPTCY CODE, MOTION FOR APPLICATION OF FED.R.BANKR. P. 7023,
AND MOTION FOR DECLARATORY JUDGMENT*

*TO THE HONORABLE COURT:*

**COMES NOW**, Toby Cross ("**Cross**") and Arthur Lopez (**Lopez**"), (referred to as the "**Creditors**", or "**Plaintiffs**" and collectively as the "**Class Claimants**"), by and through their counsel, and hereby respectfully submits *MOTION FOR APPLICATION OF FED.R.BANKR. P. 7023, MOTION FOR DECLARATORY JUDGMENT, ADVERSARY COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY AND OBJECTION TO DEBTOR'S DISCHARGE PURSUANT TO SECTIONS 523 AND 727 OF THE BANKRUPTCY CODE, as* creditors of Elizabeth Marie Blank (the **"Debtor"**, or **"Blank"**) in the matter of *In re Blank,* No. 15-07321, a voluntary petition filed under Chapter 7 of the Bankruptcy code (the "**Bankruptcy Code**"), in this Court on July 16, 2015, ("**Blank's Bankruptcy Case**"), and as Plaintiffs in a class action styled Cross v. KMB Statistics L.L.C., filed in December 27, 2013, and pending in The United States District Court For the Northern District Of Texas, Dallas Division,  No. 3:13-cv-05013-M-BH, (the **"DPPA Class Action"**), before The Honorable Barbara M.G. Lynn, with pretrial management handled by The Honorable Irma C. Ramirez, United States Magistrate Judge.

Plaintiffs seek relief, (**"RELIEF REQUESTED"**) as follows:

**1.      Motion to apply the provisions of the Bankruptcy Rules 9014 and 7023 and allow the filing of a class proof of claim for the class of claimants defined in the DPPA Class Action;**

**2.      Motion for Declaratory Judgment finding that Plaintiff's DPPA claims against KMB Statistics L.L.C., and Data Solutions Of America Inc. are not part of the Debtor's Estate;**

**3.      Judgment for Plaintiffs against the Debtor as to dischargeability of debt, pursuant to 523 and 727 of the Bankruptcy Code; and**

Creditors' allegations as to themselves and their own actions, as set forth herein, are based upon their personal knowledge, and all other allegations are based upon information and belief pursuant to the investigations of counsel. Based upon such investigations, Blank's DPPA Creditors believe that substantial evidentiary support exists for the allegations herein, or that such allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## I. PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs Toby Cross, an individual residing in Anderson County, Texas, and Plaintiff Arthur Lopez, an individual residing in Dallas County, Texas, are licensed and registered drivers in the State of Texas. Plaintiff's motor vehicle records ("MVR's"), which included Personal Identifying Information ("Pii"), such as their name, address, VIN number, type, make, model, year, and license plate number of their automobiles, were obtained, used, and disclosed by the Debtor, without their express consent, in violation of The Driver Privacy Protection Act , 18 U.S. Code § 2721, ("DPPA"). Plaintiffs assert federal claims under the DPPA.

2.      The Defendant, Elizabeth Marie Blank, is the Debtor in this case, No. 9:15-bk-07321-FMD, filed under Chapter 7 of Title 11, now pending in this Court.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

4.      The court has jurisdiction in this proceeding pursuant to 28 U.S.C. §1334(b), §157(b)(2)(J) and 11 U.S.C. §727(c).  It is a core proceeding.

5.      As a federal court, this Court has subject matter jurisdiction over those claims under 28 U.S.C. § 1331 and 18 U.S.C. § 2724(a).

6.     As a bankruptcy court, the Court also has subject matter jurisdiction because this is also an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure to object to Debtor's discharge under 11 U.S.C. § 727(a).

7.     This Court has personal jurisdiction over the Debtor under Florida Statute § section 48.193 because, inter alia, the acts alleged herein were committed in the State of Florida, including carrying on the business of the Blank Entities and violating the DPPA.

8.     Venue before this Court is also proper under 28 U.S.C. § 1409.

9.     The duly appointed Chapter 7 Trustee in this case is Diana L. Jenson.

10.    All conditions precedent to the filing of this action has occurred.

## II. PRELIMINARY STATEMENT

11.    This Adversary Proceeding arises out of a present and actual controversy related to Debtor's violations of the Driver's Privacy Protection Act (18 U.S.C. §§ 2721-2725) ("DPPA"). Plaintiff's brought a DPPA Class Action against Debtor, an action now stayed as to the Debtor, pursuant to the Automatic Stay, 11 U.S.C. §362.

12.    On December 27, 2013 Plaintiffs brought a class action, , originally styled, Doe v Compact Information Services Inc., and presently styled, *Cross v. KMB Statistics L.L.C.,* in The United States District Court For The Northern District Of Texas, Dallas Division, No. 3:13-cv-05013-M-BH against Blank, Blank's  two (2) Florida corporate entities, KMB Statistics, L.L.C. ("KMB"), and Data Solutions of America, Inc. ("DSOA"), (collectively, "Blank Entities"), and additional named entities, based upon their involvement in a national direct marketing scheme which systematically violated the Driver's Privacy Protection Act (18 U.S.C. §§ 2721-2725) ("DPPA"). See EXHIBIT A. The allegations against Blank and Blank Entities included claims

that Blank acted independently, and in concert with KMB and DSOA, by using KMB and DSOA

as agents and co-conspirators, to knowingly authorize, direct, ratify, approve, acquiesce, and

participate, in conduct which violated the DPPA by:

      a.     Obtaining, directly or indirectly, motor vehicle records of Plaintiffs and the other class members maintained by the Texas State Motor Vehicle Department, for purposes that violate the DPPA;

      b.     Using the motor vehicle records of Plaintiffs and the other class members for purposes that violate the DPPA;

      c.     Re-disclosing the motor vehicle records of Plaintiffs and the other class members for purposes that violate DPPA.

13.     The Plaintiffs seek remedies which include damages, "but not less than liquidated damages in the amount of $2,500," punitive damages for willful and reckless disregard of the DPPA, reasonable attorneys' fees, and other litigation costs reasonably incurred, and such preliminary and equitable relief as the Court determines to be appropriate, pursuant to and consistent with 18 U.S.C. § 2724(b). Preliminary discovery has shown that class members conservatively number in the tens of millions.

14.     On July 16, 2015, (the **"Petition Date"**), Blank filed a voluntary petition (the **"Petition"**), for relief under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Middle District of Florida.

15.     On July 23, 2015, Plaintiffs each received Notice of Chapter 7 Bankruptcy case, Meeting of Creditors, & Deadlines, Case 9:15-bk-07321-FMD, dated 07/17/15.

16.     On July 24, 2015, Plaintiffs provided notice to the Texas court related to blank's bankruptcy by filing a motion for Leave to File Judicial Notice of Defendant Blank's Bankruptcy Filing, (doc. 137).

17.     On August 19, 2015, the Debtor's duly-noticed meeting of creditors was held pursuant to Section 341(a) of the Bankruptcy Code (the **"Section 341 Meeting").**

18.     On September 15, 2015, sixty (60) days after Debtor filed for bankruptcy protection,  Debtor's motion in the Texas DPPA case related to Data Solutions Of America Inc.'s motion to dismiss on jurisdictional grounds was granted, dismissing claims against Defendant Data Solutions of America, Inc., without prejudice (doc. 149).

19.     On September 30, 2015, Plaintiff's Class Action was stayed in the Texas case by the Honorable Judge Irma C. Ramirez by the following order:

> *Before the Court for determination is Plaintiff's Request for Judicial Notice of Defendant Elizabeth Blank's Chapter 7 Bankruptcy Filing in the United States Bankruptcy Court, Middle District of Florida, filed 7/24/2015 (doc. [137]). The unopposed request is GRANTED. This action is hereby STAYED. There appears to be no reason to maintain this case open for statistical purposes, and it is hereby ADMINISTRATIVELY CLOSED. Any motion to reopen shall be filed within the statutory period of limitations for the plaintiffs' claims or within sixty days of the date that the related bankruptcy proceedings have been concluded, whichever date is later. (Ordered by Magistrate Judge Irma Carrillo Ramirez on 9/30/2015) (bdb)*

20.     On October 19, 2015 Plaintiff's filed this timely adversary complaint.

21.     As of the date of this Complaint the Debtor has not been granted a discharge.

## III. BACKGROUND

**A.     The Driver's Privacy Protection Act**

22.     The DPPA regulates personal information stored in states' MVRs. The DPPA defines "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name address, telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3). The DPPA defines a "motor vehicle record" as "any record that pertains to a motor vehicle operator's

permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1).

23.     The DPPA generally prohibits obtaining personal information from MVRs outside a narrowly-limited set of circumstances. "It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2722(a). Relatedly, the DPPA prohibits false representations in the course of obtaining personal information from MVRs. "It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record." 18 U.S.C. § 2722(b).

24.     The DPPA provides one mandatory exception and fourteen permissible exceptions (permissible purposes) to section 2722(a)'s general prohibition on disclosure of personal information in MVRs which allow for the limited disclosure of personal information. Once a reseller obtains information from the states' MVRs, the states are no longer the sole custodian of that information. For the DPPA to function effectively, the reseller must then assume the same responsibility (and liability) for that information as the state. Hence, the DPPA imposes duties on resellers to ensure that recipients of information from MVRs use that information consistent with section 2721(b). "Based on the language of the statute, its structure, and its legislative history, . . . the DPPA imposes a duty on resellers to exercise reasonable care in responding to requests for personal information drawn from motor vehicle records." *Gordon v. Softech Int'l, Inc.*, 726 F.3d 42, 53 (2d Cir. 2013).

25.     In this case, it is particularly important that the DPPA also requires that resellers of personal information from MVRs to keep, for five years, records identifying persons to who received such personal information and the permissible purpose for doing:

Any authorized recipient (except a recipient under subsection (b)(11)) that resells or re-discloses personal information covered by this chapter must keep for a period of 5 years records identifying each person or entity that receives information and the permitted purpose for which the information will be used and must make such records available to the motor vehicle department upon request.18 U.S.C. § 2721(c). "Any person who re-discloses or resells personal information from DMV records must, for five years, maintain records identifying to whom the records were disclosed and the permitted purpose for the resale or re-disclosure." *Condon*, 528 U.S. at 146 (citing 18 U.S.C. § 2721(c)).

26. Finally, the DPPA creates a private right of action in federal court against a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter[.]" 18 U.S.C. § 2724(a). In a DPPA action,

[t]he court may award—

(1)    actual damages, but not less than liquidated damages in the amount of $2,500;
(2)    punitive damages upon proof of willful or reckless disregard of the law;
(3)    reasonable attorneys' fees and other litigation costs reasonably incurred; and
(4)    such other preliminary and equitable relief as the court determines to be appropriate.

In *Kehoe v. Federal Bank & Trust*, the Eleventh Circuit held, based on the unambiguous language of the DPPA, that proof of any actual damages is not necessary in order to recover under the DPPA's liquidated damages provision. 421 F.3d 1209, 1212 (11th Cir. 2005) (citing *Doe v. Chao*, 540 U.S. 614 (2004)).

**B.    Blank's Businesses involved with obtaining, using, and re-disclosing MVRs for Direct Marketing**

26.    On March 18, 2009, Blank, as President of KMB Statistics, LLC, entered into a purchase agreement with the Texas Department of Motor Vehicles to obtain access to the Texas MVR database on a continuous and repeated basis. One of the attachments to KMB's contract with the Texas DMV required Blank to certify its own intended uses for the personal information

in the Texas MVRs. In KMB's contract with the Texas DMV, Blank certified that KMB had three permissible purposes to obtain personal information in the Texas MVRs: (1) "normal course of business" under 18 U.S.C. § 2721(b)(3); (2) "research activities" under 18 U.S.C. § 2721(b)(5); and (3) insurance-related purposes under 18 U.S.C. § 2721(b)(6). In fact, KMB (and Blank) did not use the personal identifying information for such purposes.

27.    On May 15, 2009, Blank, as President of KMB Statistics, LLC, entered into an agreement with the Florida Department of Highway Safety and Motor Vehicle (referenced as number HSMV-1027-09) to obtain access to the Florida MVR databases on a continuous and repeated basis. In KMB's contract with the Florida DMV, from 2009 to 2012, Blank certified that KMB's permissible purpose to obtain personal information in the Florida MVRs was insurance-related under 18 U.S.C. § 2721(b)(6). In fact, KMB (and Blank) did not use the personal identifying information for such purposes.

28.    In February 2011, Compact Information Systems ("CIS"), a Washington Corporation, purchased the assets of DSOA and KMB, including its "vehicle database," hired Blank as the Vice President of CIS's Vehicle Division, and hired DSOA's staff, reportedly about five (5) individuals. CIS rebranded DSOA's "National Auto List" as its "Compact National Auto List" ("CNAL"). Reportedly, CIS was a nationally recognized direct marketing data provider.

29.    Blank remained as DSOA's President until it filed for dissolution on September 28, 2012. Blank remained as KMB's President until it filed for dissolution on September 27, 2013. Blank remained with CIS until January 2014.

**C.     In 2011, The State of Texas Motor Vehicle Department Officials conducted a covert operation which found that Blank was violating the Driver's Privacy Protection Act (18 U.S.C. §§ 2721-2725) ("DPPA"), and terminated Blank's access to State MVRs.**

30.    "**VEHICLE ALERT NOTICE-2ND ATTEMPT-URGENT, IMMEDIATE**

**RESPONSE TO THIS NOTICE REQUIRED**" is generally written in large red letters on the front of an official appearing letter addressed to consumers, notably including the make, model, and year of the consumer's motor vehicle. The document claims to have knowledge of the consumer's motor vehicle warranty, claims it has expired, and provides an urgent reminder that the consumer should contact the noted telephone number.  Millions of Americans are bombarded by these documents. The most common source to obtain this personal identifying information is state motor vehicle records.   The Driver's Privacy Protection Act (18 U.S.C. § 2721-2725) ("DPPA") forbids such access if used for direct marketing without the consumer's express consent. Blank Entities acted as a supplier of MVRs to the persons and companies sending these direct marketing letters.

31.     Due to complaints and concerns about improper access to Texas MVRs, and in order to impose appropriate compliance controls on its use, the Texas DMV conducted a covert operation and "salted" the MVR database with "test records": records of fictitious persons that the Texas DMV inserted into its responses to weekly bulk requestors of MVR data, without notifying the bulk requestors. The test records had fictitious names, vehicle VINs—but real addresses. Because these test records did not relate to any real person and the fictitious names from the test records could only be acquired from the Texas MVRs, any direct marketing mailed to a test record would reveal misuse of the Texas MVR database—and a corresponding violation of the DPPA. By salting the MVR database with different test records, the Texas DMV could correlate direct marketing sent to a specific text record to a particular bulk requestor. In a response to an FOIA request from Attorney Joseph H. Malley, Creditor's Counsel, Texas DMV Representative Diane Dobson stated:

"[T]he Texas Department of Motor Vehicles (TxDMV) – Vehicle Titles and Registration (VTR) takes its responsibility to protect the personal information contained in the Registration and Title

System (RTS) database and prevent any misuse very seriously. As a result of amendments made to the DPPA by the 106th U.S. Congress, the State of Texas acted to insure the privacy of personal information contained in the RTS by "opting out" all motor vehicle owners. This means the TxDMV-VTR does not release personal information from the motor vehicle registration and titling records unless such release is required or permitted by law. The TxDMV-VTR strictly prohibits the use of the personal information for marketing or soliciting motor vehicles owners.

Although there are vendors who purchase motor vehicle records data from the TxDMV, the use of this data is regulated by law and strict contractual guidelines. If a vendor sells or uses the data in violation of the DPPA, their contract is terminated and they are prohibited from purchasing the data in the future. To identify vendors who may be using or selling the data which is then misused, the Division implemented a means to verify potential misuse. Periodically, the Department creates a series of "test records". Each test record or records is/are unique to a single vendor. Typically, a different record is inserted into the weekly file a vendor receives for three to four consecutive weeks. Vendors are not advised of this internal check and balance. We have provide to you copies of the checks wherein CIS paid for some of the weekly update files on behalf of KMB Statistics. The letter regarding the KMB Statistics contract termination and the subsequent letter to cease and desist from further use of the data that have previously been provided are the only documents regarding the Department's action to terminate the contract and to advise KMS Statistics to stop using/distributing the data purchased from the TxDMV."

32.     The State of Texas Motor Vehicle Department sent a "cease and desist" letter to Blank and KMB terminating its contractual agreement to obtain Texas MVRs on November 30, 2011 for violations of the DPPA. In a response to an FOIA request from Attorney Joseph H. Malley, Creditor's Counsel, Texas DMV Representative Diane Dobson stated:

"To determine whether a vendor is using the information contained in the data from the Registration and Title System database in accordance with the DPPA; the terms of the contract and the permitted use the vendor attests to, the Division randomly inserts test records into the files provided to vendors.

Attached are three solicitations that were made from three separate test records that were included in the data provided to KMB Statistics.  These solicitations were are in direct violation of the terms of the contract and resulted in the termination thereof.  When the first solicitation was received the contract was immediately terminated.  Upon receipt of subsequent solicitations, KMB Statistics was sent a decease and desist letter."

33.     Plaintiffs filed a class action on December 27, 2013, pending in The United States District Court For the Northern District Of Texas, Dallas Division, No. 3:13-cv-05013-M-BH,

originally styled, Doe v Compact Information Services Inc., and presently styled, *Cross v. KMB*

*Statistics L.L.C.,* an action before The Honorable Barbara M.G. Lynn, with pretrial management

handled by The Honorable Irma C. Ramirez, United States Magistrate Judge.

**IV. ARGUMENT**

I.   **PLAINTIFF'S MOTION TO APPLY PROVISIONS OF THE  BANKRUPTCY RULES 9014 and 7023 AND ALLOW THE FILING OF A CLASS PROOF OF CLAIM OF PROOF FOR THE CLASS OF CLAIMANTS DEFINED IN THE DPPA CLASS ACTION SHOULD BE GRANTED**

34.      Class Claimants are parties to a class action suit filed in the United States District

Court for the Northern District of Texas, presently styled, *Cross v. Kmb Statistics L.L.C.,*  Case

No. 3:13-cv-05013-M-BH (the "Class Action") before Judge Barbara Lynn. Class Claimants

seek class certification in the Class Action.  Class Claimants have filed the underlying motion to,

inter alia, file and prosecute a class proof of claim on behalf of all similarly situated claimants of

Debtor.  Class Claimants have been diligently pursuing class certification, however, as of the

date of this motion, a final ruling has not been made.  The Honorable Irma C. Ramirez, United

States Magistrate Judge had set a hearing on October 2, 2015 as the final date to obtain

Discovery related to Class Action Certification. The Class Action was stayed by debtor's

automatic stay.

1.      **Request to Allow The Honorable Irma C. Ramirez to Resolve the Rule 23 certification issues/Limited Abstention**

35.      The Class Claimants have requested a lift of the stay so that the Class Action can

proceed before The Honorable Irma C. Ramirez to determine the class certification issues.

Insofar as there are Rule 23 issues in the underlying motion, this Court should allow The

Honorable Irma C. Ramirez to decide the Rule 23 issues to conserve legal and judicial resources.

The Class Action was pending almost 18 months in advance of the bankruptcy filing. The Class Action claims are non-bankruptcy related. The District Court has already heard and considered arguments on the motion for class certification and motion to dismiss and can dispose of these issues efficiently. Judicial economy will be furthered by allowing the case to continue in the District Court where it originated, given the familiarity of the District Court with the case at hand and the substantive laws governing the claims. The amount of any money damages resulting from the Class Action will be reduced to judgment so that Class Claimants and the may liquidate the claims of the Class Claimants in this bankruptcy matter.   Insofar as proofs of claim will need to be filed for the payment of prepetition claims, this Court should (a) extend the proof of claim deadline for the Class Claimants until after The Honorable Irma C. Ramirez has determined the certification issues, and (b) thereafter, allow the filing of a class proof of claim so that the class members may receive their proper distribution in this case.

**2.      Basis for Certification of the Class**

36.      As will be demonstrated before The Honorable Irma C. Ramirez and as indicated within Plaintiffs Motion For Class Certification, EXHIBIT C, and incorporated by reference herein, the Class Claimants have satisfied the requirements for Fed. R. Civ. P. 23, and have set forth a clear and unambiguous class definition in connection with their DPPA claims:

**Definition of the Class and Subclasses:**

> **(a)NATIONWIDE CLASS:** All persons in the United States who, on or after, four (4) years prior to the date of this filed complaint, through the final disposition of this or any related actions (the "Class Period"), had Defendant Elizabeth Blank, KMB Statistics, LLC, Data  Solutions of America Inc., unlawfully obtain, use, and/or disclose personal information from Motor Vehicle Records, ("MVRs"), maintained by State Motor Vehicle Departments,  without express consent, in violation of  the Driver's Privacy Protection Act ("DPPA"),18  U.S.C. § 2721 *et seq*. Some persons within the NATIONWIDE CLASS are also within the TEXAS SUBCLASS;

**(b)TEXAS SUBCLASS** : All persons in the Texas who, on or after, four (4) years prior to the date of this filed complaint, through the final disposition of this or any related actions (the "Class Period"), had Defendant Elizabeth Blank, KMB Statistics, LLC, Data Solutions of America Inc., unlawfully obtain, use, and/or disclose personal information from Motor Vehicle Records, ("MVRs"), maintained by State Motor Vehicle Departments, without express consent, in violation of the Driver's Privacy Protection Act ("DPPA"),18 U.S.C. § 2721 *et seq.* Persons within the TEXAS SUBCLASS are also within the NATIONAL CLASS;

**3.        Bankruptcy Court Factors**

37.      In determining the propriety of the filing of a class proof of claim and adoption of Fed.R.Bankr.P. 7023, Courts look at the following additional factors which also weigh in favor of allowing Class Claimants to file a class proof of claim.

**a.        Class certification and a class claim are the superior methods for handling Class Claims**

38.      "In determining whether a class action is the superior method of adjudicating a particular claim, the court must exercise its discretion and carefully 'consider the benefits and costs of class litigation.'" *In re Commonpoint Mortgage*, 283 B.R. at 479 (quoting *In re American Reserve Corp.,* 840 F.2d 487, 492 (7th Cir.1988)). In this case, because of the relatively low amount of recovery compared with the cost of litigation, many potential class members would be unlikely or unable to pursue claims against the Debtor, thus, making the filing of a class proof of claim optimal to protect their interests.

39.      The class proof of claim mechanism promotes judicial economy and efficiency by eliminating the duplicative presentation of proofs, making it cost effective for individuals with small claims to have their day in court.  Further, with only one proof of claim for the Class, Debtor would only be required to file one objection and deal with one group of counsel on these issues, conserving its limited resources. The Class claim also conserves resources of the Court,

as the issue of the validity of the claim can be determined in one hearing, rather than thousands of hearings on each individual claim.

40.    Absentee class members do not have a significant interest in controlling or prosecuting separate actions. Individual class members cannot afford to prosecute separate actions; therefore, they do not have a significant interest in controlling this litigation. Further, Class Claimants' interests are aligned with absent class members' interests; thus, Class Claimants will adequately prosecute this action on their own behalf and on behalf of absent class members.

**The Benefits of a Civil Class Action Exist in the Bankruptcy Context as Well**

41.    An additional inquiry into the superiority requirement in the bankruptcy context is whether the benefits that generally support class certification in civil litigation are realizable in the bankruptcy case. *In re Commonpoint Mortgage Co.*, 283 B.R. at 479. "These benefits usually include efficiency of a class proof of claim, compensation to the injured parties, and deterrence of future wrongdoing by the debtor." *Id.* (internal quotation omitted).

**b.    Efficiency of class proof of claim**

42.    As noted above, the submittal of one class proof of claim greatly increases the efficiency of the claims process relative to this group of claimants.  Rather than having to submit objections to thousands of claims and deal with counsel for thousands of claimants, Debtor will only need to file a single objection and deal with one group of counsel. Given Debtor's resources, this fact demonstrates that the class proof of claim is the most efficient.  Further, with only the validity of a class proof of claim to decide, the Court's resources are likewise conserved, enhancing the efficiency of the class proof of claim process.

**c.    Compensation to injured parties**

15

43.     Even in bankruptcy, the class action mechanism is  useful because  "holders of contingent claims ... may not recognize their entitlement unless some champion appears." *In re American Reserve Corp.,* 840 F.2d at 489. For these potential claimants, "[e]ven though there is no fee to file claims in bankruptcy, the opportunity costs of the time needed to investigate and decide whether to file may be substantial." *Id. See In re United Companies Fin. Corp.,* 276 B.R. 368 (Bankr.D.Del.2002) (class action is superior method for adjudicating claims where many class members are unaware of their rights under state law and where small amount of any potential recovery renders prosecution of individual claims cost-prohibitive).   *In re Commonpoint Mortgage Co.*, 283 B.R. at 480.   Debtor's bar date notice was not provided to DPPA Claimants to inform them that they have a claim and that there is a deadline to prosecute the claim.    Given the relatively small amount of a single claim and the relatively high costs of acquiring counsel for this purpose, many potential class members will have no knowledge to submit a claim.

### d.     Justice for Class Claimants

44.     "The court must consider the interests of the potential class members themselves. The allegations in this case suggest that CommonPoint may have wronged several of its unsuspecting consumer customers.    Without access to the Closing Document, which was generated internally by CommonPoint employees, many of these borrowers are likely unaware of their potential claims against CommonPoint.  Even if some borrowers suspect that they may have a claim against CommonPoint, it is probable that they will lack the resources and motivation necessary to pursue their claim in the normal bankruptcy setting. Thus, absent class certification in this case, most of these consumers will have no other meaningful opportunity to pursue their

claims against CommonPoint. Such a result would be unfair and unacceptable to this court." *In re Commonpoint Mortgage Co.*, 283 B.R. at 481.

## II. PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT EVIDENCING THAT PLAINTIFF'S DPPA CLAIMS AGAINST KMB STATISITICS L.L.C., AND DATA SOLUTIONS OF AMERICA INC. ARE NOT PART OF THE DEBTOR'S ESTATE SHOULD BE GRANTED.

### A. Debtor's Proceeding Is a "Core" Matter in Which the Bankruptcy Court Could Enter Final Orders and Judgments as to Plaintiff's Claims

45.     Debtor's bankruptcy petition makes clear that the relief sought by the Debtor is entry of a final judgment to deny DPPA claims by Plaintiffs against not only the Debtor, but also KMB and DSOA. Such a finding would be binding on Plaintiffs, as a party to that litigation, in subsequent proceedings. The objections by Plaintiffs to the discharge are matters that "stem from the bankruptcy itself" because a judgment providing for such relief is a "core" matter that "arises under" the Code and "arises in" a bankruptcy case. Any determinations that have to be made in rendering a judgment on an objection to discharge do not change the "core" status of the proceeding, and do not make it constitutionally impermissible for an Article I bankruptcy court to enter a final judgment in those matters.

### B. Plaintiff's Objection to the Discharge Action Is a "Core" Matter "Arising Under" the Code and Which "Arises In" a Bankruptcy Case

46.     28 U.S.C. § 157(b)(1) provides that bankruptcy courts may enter final orders and judgments in "core" proceedings "arising under title 11, or arising in a case under title 11[.]" Objections to discharge pursuant to 11 U.S.C. § 727 are matters "arising under title 11" in that the statute, in and of itself, is what creates the right to relief. *See* 1 COLLIER ON BANKRUPTCY ¶ 3.01[3][e][i]; *see also* 28 U.S.C. § 157(b)(2)(J). Moreover, an objection to a discharge in bankruptcy is a matter that is unique to bankruptcy law, and which "aris[es] in a

case under title 11". *See* 1 COLLIER ON BANKRUPTCY ¶ 3.01[3][e][iv]. Accordingly, the claims for relief alleged in the Plaintiff's adversary complaint assert objections to discharge that are "core" matters for which the bankruptcy court could enter a final order consistent with the constitutional standard articulated by this Court.

## C.   Necessarily Implied in the Relevant Parts of Code § 727 Is Authority to Determine Property of the Debtor or the Estate

47.    Section 541(a) of the Bankruptcy Code defines a debtor's bankruptcy estate to include "all legal and equitable interests of the debtor in property as of the commencement of the case." This includes legal causes of action the debtor had against others as of the commencement of the bankruptcy case. Only a bankruptcy trustee has standing to assert causes of action that belong to the estate, and any similar lawsuits brought by individual creditors are subject to the automatic stay provision of § 362(a)(3) Likewise, the trustee has no right to bring claims that belong solely to the estate's creditors.

48.    The grounds under Code § 727 upon which the Plaintiffs seek to deny the debtor a discharge include 11 U.S. Code § 523(a)(2)(A), 523(a)(2)(B),523(a)(4), 523(a)(6), 523(a)(7), 727(a)(3),727(a)(4)(A), 727(a)(4)(B), and 727(a)(4)(C). Insofar as all of the discharge objections on their face require a determination of whether the property in the trust was property of the estate, the bankruptcy court can not adjudicate the clearly "core" discharge objections without determining whether the property in the trust was property of the Debtor that existed on the date of the filing and hence was property of the estate.  Thus, resolution of the Plaintiff's objection requires that this bankruptcy court first determine whether the property at issue was property of Plaintiffs within the year prior to bankruptcy – property that could ultimately be brought into this bankruptcy estate by the trustee. This counterclaim's relationship to the underlying creditor proof of claim is at issue – whether it was sufficiently related to that proof of claim to permit the

counterclaim to be determined as a "core" matter. Resolution of this issue shall permit plaintiffs to file a Class Action against DSOA in Florida, without violating the stay order.

## D.      The Plaintiffs Claims Against Debtor Are Personal and Do Not Belong the Estate

49. To determine whether a cause of action belongs to the bankruptcy estate, Courts consider whether (1) the debtor itself could have raised the claim under applicable state law at the commencement of the case and (2) the cause of action does not explicitly or implicitly allege harm to the debtor.  Accordingly, a creditor may initiate an alter ego action against a debtor's principals if the claim seeks damages that are personal to the individual creditor(s) and not the general body of creditors.  *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994).  Absent a finding that the claim is of the type that could be asserted by the general body of creditors, the trustee or debtor in-possession has no right to pursue the individual alter ego cause of action.  *Id.* Under Florida law, an alter ego claim is an action to impose liability on a corporation's principals or related entities where a corporation was "organized or used to mislead creditors or to perpetrate a fraud upon them." In such circumstances Florida courts will "pierce the corporate veil" upon finding by a preponderance of the evidence that: (1) [a] shareholder dominated and controlled the corporation to such an extent that the corporation's existence, was in fact nonexistent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.12 The Eleventh Circuit Court of Appeals has held an alter ego action belongs to the bankruptcy estate under § 541 if (1) it is "a general claim that is common to all creditors," and (2) state law allows the corporate entity to bring an alter ego action against its principal. An alter ego claim is a general one when liability extends "to all creditors of the corporation without regard to the personal dealings between such officers

and such creditors." In other words, if the injury alleged in the alter ego action is an injury to the corporation and thus suffered generally by all creditors, and is not an injury inflicted directly on any one creditor, the trustee has exclusive standing to bring such an alter ego action. Conversely, a trustee may not bring an alter ego claim if the alleged injury is specific to one creditor and not to the debtor corporation and creditors generally. Bringing an alter ego claim against a corporation is necessary when ―maintaining the separateness of the corporation and its alter ego would allow the alter ego to avoid . . . an otherwise enforceable obligation, or the law, or that maintaining the separate corporations would be inequitable. St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 703 (2d Cir. 1989).

50.     In the present case, Plaintiff's claim concerns an action against the Debtor, KMB, and DSOA for unauthorized obtainment, use and re-disclosure of personal identifying information ("Pii") within their MVRs. Plaintiff's claims do not belong to the Debtor's or the estate.

**E.     The Automatic Stay Should Not Apply Because the Causes of Action Belong to the Plaintiffs and the Recovery is Against Non-Estate Property**

51.     The automatic stay should not apply to Plaintiff's DPPA claim because they are personal and do not belong to the estate. The Fifth Circuit adopted a three prong test to determine whether section 362(a)(3) applies to a particular cause of action, holding that the court is to analyze whether (1) the cause of action belongs to the debtor; (2)the cause of action that seeks to recover property of the estate; and (3) the policies of securing and preserving the debtor's property and insuring equal distributions to similar creditors. *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1143-45 (5th Cir. 1999). The Debtors could not pursue Debtor for conversion of the MVRs, which are not property of the Debtors. Because the Plaintiffs are seeking damages for

specific injury to their property converted by Debtor, claims that could not be asserted by general

unsecured creditors of the Debtors who had no interest in the Plaintiff's property (MVRs), the

automatic stay does not apply, and Plaintiffs should not be barred from bringing an "alter ego"

action.

## III. OBJECTION TO DISCHARGEABILITY AND DEBTOR'S DISCHARGE

52.   Section § 523(a) of the Bankruptcy Code excepts certain debts from discharge in a

Chapter 7 bankruptcy. According to § 523(c), a discharge under § 727 discharges an individual

debtor of the debts specified in § 523(a)(2), (4), (6) or (15), unless, on request of a creditor to

whom such debt is owed, and after notice and hearing, the court determines that such debt is

non-dischargeable. Creditors object to the dischargeability and Debtor's discharge on the basis of

the following arguments:

**1.      The Debtor's Petition Should be Dismissed for Bad Faith**

53.   A bankruptcy court may dismiss a bankruptcy petition "for cause." 11 U.S.C. §

1112(b). "[A] lack of good faith in filing the petition constitutes cause." In re 698 Flushing

Realty Corp., 335 BR 17, 19 (E.D.N.Y. 2005) (citing In re C–TC 9th Ave. P'ship, 113 F.3d

1304, 1311 (2d Cir.1997)). On a motion to dismiss a bankruptcy petition for bad faith, "once the

good faith of a debtor is called into question, the burden shifts to the debtor to demonstrate that

the petition was filed in good faith. Neither malice nor actual fraud is required to find a lack of

good faith." In re Syndicom Corp., 268 B.R. 26, 49 (Bankr. S.D.N.Y. 2001).

54. Courts have found that a debtor that files its bankruptcy petition is in bad faith when

it had no reason to reorganize or rehabilitate, and its filing of a bankruptcy petition was merely

an attempt to avoid litigating issues pending in another court. Fraternal Composite Svcs. Inc.,

315 B.R. 253, 257 (N.D.N.Y. 2004); In re First Connecticut Consulting Group, Inc., 254 Fed.

Appx. 64, 68 (2d Cir. 2007). None of the Debtor's assertions support that the debtor has financial difficulties, or for any reason required a bankruptcy reorganization. The Debtor is not insolvent. Excepting the Debtor's claim of insolvency, the Debtor's petition, Schedule B-Summary Of Schedule list more in assets ($233,126.65) than in liabilities ($192,688,00),  and excepting the cost of defending the Class Action, the sole threat to the Debtor's ongoing operations is the contingency of an unfavorable judgment in the Class Action. Absent estimation of the Class Claim damages, the Debtor would have to reserve for the full amount of the asserted Class Claim.   This is an invalid basis for filing a bankruptcy petition. See Fraternal Composite Services, 315 B.R. at 258. Indeed, "the mere possibility that a debtor may have to file for bankruptcy protection in the future does not establish grounds for finding that the debtor filed its petition in good faith." Fraternal Composite Svcs., 315 B.R. at 257. 26.  Debtor's bankruptcy petition is not to reorganize, but to re-litigate [pending issues in the Class Action filed in a Texas Federal Court],within a bankruptcy action filed in a Florida Federal Court, an  impermissible use of bankruptcy, (citing In re C-TC 9th Ave. P'ship, 113 F.3d 1304, 1310-11 (2d Cir. 1997)). See also In re 698 Flushing Realty Corp., 335 BR 17, 21 (E.D.N.Y. 2005) (dismissing petition for bad faith where "not only was th[e] case filed in an effort to obtain a perceived advantage in litigation") (quotations omitted).  ("[T]he purpose of the bankruptcy court is not to provide an alternate forum for a debtor to litigate its [non-bankruptcy] court issues when the debtor has no other need of or use for the bankruptcy court.") (quotations and citations omitted); In re HBA East, Inc., 87 B.R. 248, 260 (E.D.N.Y. 1988).

55.    On several occasions, immediately prior to the Debtor filing bankruptcy, the Debtor's Defense Counsel, Chris Rusek, advised Plaintiff's Counsel that the Debtor would file for bankruptcy if the Class Action could not be resolved. Within a few days of the dismissal of

Defendant CIS and Accudata Integrated Marketing Inc., leaving Debtor now alone in the Class Action as the only named Defendant, Blank filed for Bankruptcy. The Debtor's concerns were not strictly the threat of a judgment but Plaintiff's demand to produce documents which revealed the persons and/or entities that obtained the Plaintiff's MVRs from the Debtor, ("Debtor's Client lists"), and more importantly, the location of the databases with millions of MVRs that the Debtor obtained from State Motor Vehicle Departments. The Debtor has attempted to thwart any attempt to produce such documents. The Debtor's Defense Counsel, Chris Rusek informed Plaintiff's Counsel that Debtor possessed the "Client lists" and would produce such documents but for a confidentiality agreement entered into with CIS. See EXHIBIT B.

56.   The timing of the filing of the bankruptcy petition indicates that it was intended to delay or interfere with the Nonbankruptcy Action. These statements, and this conduct, are clear indications of a bad faith filing. See In re MacInnis, 235 B.R. 255, 261 (S.D.N.Y. 1998) (finding that use of "the threat of bankruptcy as a tactic to pressure" an adversary into resolving a case constitutes an indicia of bad faith.  When the Debtor realized that Defendant CIS and Accudata Integrated Marketing Inc., would be dismissed, leaving Debtor now alone in the Class Action as the only named Defendant, the Debtor filed its Chapter 7 petition in a last-ditch effort to avoid producing the requested documents and going to trial before the Honorable Judge Lynn. In so doing, the Debtor sought to accomplish two things. First, the Debtor sought to stay the Class Action. (The Debtor has determined that it was in the Debtor's best interest to file this Chapter 7 case in order to stay the Class Action and stop any further attempts to produce Client lists and the location of millions of MVRS.) Second, the Debtor sought to transfer the action to this Court as an alternative forum where it could re-litigate issues already ruled on in the hope of a different

outcome; moreover hoped to avoid production of the requested documents by obtaining

dischargeability within the Bankruptcy Court.

57.  By virtue of the foregoing, the Creditors hereby move the Court to dismiss the

Debtor's bankruptcy petition as nondischargeable, filed in bad faith as a litigation tactic.

**2.      The Debtor's Petition Should be Dismissed for Fraud, Pursuant to 11 U.S.C. §
523(a)(2)(A)**

58.  The Debtor contracted with State Motor Vehicle Departments, including but not

limited to Texas and Florida State Motor Vehicle Departments, and obtained Personal

Identifying Information ("Pii"), albeit "property", as defined within the Driver's Privacy

Protection Act (18 U.S.C. §§ 2721-2725) ("DPPA") and 11 U.S.C. § 101(41 (A)) of state

residents, including Plaintiffs, under false pretenses and actual fraud, by claiming a DPPA

permissible use. The Debtor's petition should be dismissed for fraud pursuant to 11 U.S.C. 523

(a)(2)(A):

Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

> 1.      A discharge under section 727, 1141, 1228(a), 1228(b) or
> 1328(b) of this title does not discharge an individual debtor from any
> debt—

> (2)  for money, property, services, or an extension, renewal, or
> refinancing of credit, to the extent obtained by --
> . . . .

> (A) false pretenses, a false representation, or actual fraud, other than a statement
> respecting the debtor's or an insider's financial condition;

59. All or part of the debt owed to plaintiff, as evidenced by the allegations against the

Debtor within the Class Action, is non-dischargeable as it is a debt for money, property, services,

or an extension, renewal, or refinancing of credit, that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code § § 523(a)(2)(A).

60.   By virtue of the foregoing, the Creditors hereby move the Court to dismiss the Debtor's bankruptcy petition pursuant to 11 U.S. Code § 523(a)(2)(A).

**3.      The Debtor's Petition Should be Dismissed for Fraud, Pursuant to 11 U.S.C. §
         523(a)(2)(B)**

61.     On March 18, 2009, Debtor, as President of KMB Statistics, LLC, entered into a purchase agreement with the Texas Department of Motor Vehicles to obtain access to the Texas MVR database on a continuous and repeated basis. One of the attachments to KMB's contract with the Texas DMV required Blank to certify its own intended uses for the personal information in the Texas MVRs, and specifically prohibited adopting a resale purchaser's permissible purpose to obtain such information. The attachment stated that Texas could release personal information in its MVRs "only if the Purchaser certifies its intended uses in this Attachment."

Certified intended uses include only those uses for which the Purchaser itself will actually employ the information; certified intended uses do not include uses that are speculative or that will be engaged in by persons acquiring the information from the Purchaser. If the Purchaser's intended use of the information is not one of the permitted uses, the State will not release the privacy protected personal information.

62.     In KMB's contract with the Texas DMV, Blank certified that KMB had three permissible purposes to obtain personal information in the Texas MVRs: (1) "normal course of business" under 18 U.S.C. § 2721(b)(3); (2) "research activities" under 18 U.S.C. § 2721(b)(5); and (3) insurance-related purposes under 18 U.S.C. § 2721(b)(6). In fact, KMB (and Blank) did not use the personal information in the Texas MVRs for any of these purposes.

63.     On May 15, 2009, Blank, as President of KMB Statistics, LLC, entered into an agreement with the Florida Department of Highway Safety and Motor Vehicle (referenced as number HSMV-1027-09) to obtain access to the Florida MVR databases on a continuous and

repeated basis. In KMB's contract with the Florida DMV, from 2009 to 2012, Blank certified that KMB's permissible purpose to obtain personal information in the Florida MVRs was insurance-related under 18 U.S.C. § 2721(b)(6).

64.     Evidence obtain from the covert investigation conducted by the State of Texas Motor Vehicle Department representatives showed the Debtor's certified statements were materially false.

65.     Bankruptcy Code § 523(a)(2)(B) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(2)  for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --
. . . .

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

66.     All or part of the debt owed to plaintiff, as evidenced by the allegations against the Debtor within the Class Action, is non-dischargeable as it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code § § 523(a)(2)(B).

67.     By virtue of the foregoing, the Creditors hereby move the Court to dismiss the Debtor's bankruptcy petition pursuant to 11 U.S. Code § 523(a)(2)(B).

4. **The Debtor's Petition Should Be Dismissed For Fraud, Pursuant to 11 U.S.C. § 523(a)(4)**

68. State Motor Vehicle Departments contracts placed the Debtor in a fiduciary capacity. The MVRs were in the Debtor's care, custody and control.  Debtor committed fraud while acting in a fiduciary capacity by permitting the unauthorized obtainment, use and re-disclosure of the creditor's MVRs.

69. Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

 . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

70. All or part of the debt owed to plaintiff, as evidenced by the allegations against the  Debtor within the Class Action, is non-dischargeable as it is a debt for fraud while acting in a fiduciary capacity, embezzlement, or larceny within the meaning of Bankruptcy Code § 523(a)(4).

71. By virtue of the foregoing, the Creditors hereby move the Court to dismiss the Debtor's bankruptcy petition pursuant to 11 U.S. Code § 523(a)(4).

5. **The Debtor's Petition Should be Dismissed for Fraud, Pursuant to 11 U.S.C. § 523(a)(6)**

72. The protections afforded consumers by the Driver's Privacy Protection Act is premised on a screening process limiting access to their motor vehicle records, an obligation also imposed on any and all individuals and entities that obtain, re-disclose, and resell such data. The DPPA imposes a duty on sellers, beginning with the State, to exercise reasonable care in responding to requests to purchase the motor vehicle records. This duty is then transferred to

individuals or entities that have obtained the motor vehicle records when they are re-disclosing and/or reselling the motor vehicle records. Such duty also exists for entities purchasing the motor vehicle records from individuals or entities in possession or MVRs, a duty that includes, but is not limited to, exercising reasonable care to confirm the authority of the reseller to possess the motor vehicle records for resale. Individuals and entities that obtain, use, re-disclose, resell, and purchase the motor vehicle records must follow screening policies and reasonable verification measures. This legal obligation not only attempts to protect the privacy of the individuals required to provide their Pii to the State Motor Vehicle Departments, but also their personal safety.

73.     The Class Action was initially styled Doe v. Compact Information Systems, Inc. Doe was an individual residing in Manatee County, Florida. She was concerned about revealing her actual identity since she is a survivor of a domestic abuse relationship. Jane Doe moved to Florida to avoid the abusive relationship, desiring that her former predator not have the ability to locate, stalk, and abuse her again, which may occur if the former predator has any possible means to access her present physical address. Plaintiff Jane Doe was outraged by the privacy implications made the basis of the class action, terrified for her safety, and that of her new family, fearing that her motor vehicle records, which include her present physical address, have been obtained, re-disclosed, resold, and purchased by the Debtor, without her express consent, and that the Debtor may permit access to her personal records, possibly her former predator. The Debtor filed a motion to deny her request to proceed in the Class Action using a pseudonym to protect her identity from her former abuser. Former Plaintiff Jane Doe had

agreed to place her actual name under seal but the Debtor wanted to expose her actual name. For safety reasons she then requested dismissal from the lawsuit.

74.     Debtor caused willful and malicious injury to another entity, namely creditor, and to the property of another entity when the Debtor re-disclosed the creditor's MVRs to third parties.

75.      Bankruptcy Code § 523(a)(6) provides, in relevant part, that:

(a)     A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
       . . .

(6)     or willful and malicious injury by the debtor to another entity or to the property of another entity .

76.     All or part of the debt owed to plaintiff, as evidenced by the allegations against the  Debtor within the Class Action, is non-dischargeable as it is a debt for willful and malicious injury caused by the Debtor within the meaning of Bankruptcy Code § 523(a)(6).

77.     By virtue of the foregoing, the Creditors hereby move the Court to dismiss the Debtor's bankruptcy petition pursuant to 11 U.S. Code § 523(a)(6).

**F.     The Debtor's Petition Should be Dismissed for Fraud, Pursuant to 11 U.S.C.
       § 523(a)(7)**

78.     The Debtor violated 18 U.S.C. § 2723 (a) which states," Penalties, Criminal Fine- A person who knowingly violates this chapter shall be fined under this title." (The jurisdiction of the DPPA is the United States Department of Justice.), and also violated State laws related to DPPA, including but not limited to Texas, Section 730.015. PENALTY FOR FALSE REPRESENTATION. Debtor is liable to pay these governmental entities a fine and/or penalty. Texas State Motor Vehicle Department notified Debtor within three (3) years, sending correspondence to the Debtor in January 2013, that the Debtor continued to violate the DPPA).

Neither the United States Department of Justice, nor the State Of Texas Motor Vehicle Department, were listed as

79.     Bankruptcy Code § 523(a)(7) provides, in relevant part, that:

(a)     A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;

80.     Most courts hold that judicial fines and penalties are nondischargeable even if payable to a private litigant as long as the fine was levied to vindicate the dignity and authority of the court. See In re Allison, 176 B.R. 60 (S.D. Fla. 1994) ("it is enough that the fine or penalty, although made payable to a party, be awarded to vindicate the dignity and authority of the court"); In re Winn, 92 B.R. 938 (Bankr. M.D. Fla. 1988) (stating that the fact that a fine is not payable to a governmental unit is not necessarily determinative if the fine is payable for the benefit of a governmental unit); In re Gedeon, 31 B.R. 942 (Bankr. D. Colo.1983) (finding nondischargeable a civil contempt fine even though payable to an individual plaintiff); In re Marini, 28 B.R. 262(Bankr. E.D.N.Y. 1983) (finding nondischargeable a contempt fine levied primarily to uphold the dignity of the court, even though the fine was to be paid directly to the plaintiff).

81. Bankruptcy Code § 523(a)(7) provides, in relevant part, that:

> (a)      A discharge under section 727, 1141, 1228(a), 1228(b) or
> 1328(b) of this title does not discharge an individual debtor from any
> debt—
>  . . .
>
>  (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for
> the benefit of a governmental unit, and is not compensation for actual pecuniary
> loss, other than a tax penalty—
>
> (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
>
> (B) imposed with respect to a transaction or event that occurred before three years
> before the date of the filing of the petition;

82.     Most courts hold that judicial fines and penalties are nondischargeable even if payable to a private litigant as long as the fine was levied to vindicate the dignity and authority of the court. See In re Allison, 176 B.R. 60 (S.D. Fla. 1994) ("it is enough that the fine or penalty, although made payable to a party, be awarded to vindicate the dignity and authority of the court"); In re Winn, 92 B.R. 938 (Bankr. M.D. Fla. 1988) (stating that the fact that a fine is not payable to a governmental unit is not necessarily determinative if the fine is payable for the benefit of a governmental unit); In re Gedeon, 31 B.R. 942 (Bankr. D. Colo.1983) (finding nondischargeable a civil contempt fine even though payable to an individual plaintiff); In re Marini, 28 B.R. 262(Bankr. E.D.N.Y. 1983) (finding nondischargeable a contempt fine levied primarily to uphold the dignity of the court, even though the fine was to be paid directly to the plaintiff).

83.     All or part of the debt owed to plaintiff, as evidenced by the allegations against the  Debtor within the Class Action, is non-dischargeable as it is a debt for willful and malicious injury caused by the Debtor within the meaning of Bankruptcy Code § 523(a)(7).

84. By virtue of the foregoing, the Creditors hereby move the Court to dismiss the Debtor's bankruptcy petition pursuant to 11 U.S. Code § 523(a)(7).

**G.     The Debtor's Petition Should be Dismissed for Fraud, Pursuant to 11 U.S.C. § 727(a)(3)**

85. Blank and KMB obtained millions of Texas MVRs for almost two (2) years. The State of Texas Motor Vehicle Department "cease and desist" order not only terminated Blank and KMB's obtainment of the MVRs, but also use and re-disclosure of the Texas MVRs. Blank's legal obligation was then to safely and adequately destroy such data. Since MVR data provided to Blank and KMB continue to date to be used, DPPA Putative Class Representatives question Blank's Bankruptcy Petition, Schedule B-Personal Property, Type of Property Number 24, for failing to note customer lists or compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)), Type of Property Number 28, failing to note Office equipment or Machinery, fixtures, equipment, and supplies used in business, such as computers, backup disks, cloud servers, data aggregators, Type of Property Number 30,  failing to note Inventory including client lists, documents requested by DPPA Putative Class Representatives pursuant to request for productions within the DPPA Class Action, access to such documents stayed by the Blank bankruptcy stay, but reportedly in the possession of Blank's Defense Counsel, Chris Rusek.

86. When Blank, as President of KMB Statistics, LLC, entered into an agreement with the Florida Department of Highway Safety and Motor Vehicle to obtain access to the Florida MVR databases, Blank directed the Florida's MVR data to be sent to the following Internet Protocol addresses: 64.49.219.228, a data-mining company in Colleyville, Texas, and 66.185.19.9, an ISP called Wisconsin CyberLynk Network, Inc., in Franklin, Wisconsin. While

CIS reportedly purchased the assets of Blank's DSOA and KMB, a document that DPPA Putative Class Representatives have also been unable to obtain, Counsel for former Defendant CIS, Basheer Ghorayeb of Jones Day Law Firm in Dallas Texas claimed that CIS did not obtain this data, nor  had knowledge such MVRs were being obtained. Interestingly enough, Counsel for Blank, Chris Rusek of the Rodriquez law Firm in Dallas Texas also claimed that Blank was not aware of these entities that were obtaining the Florida MVRs at her direction. Blank's Bankruptcy Petition, Schedule B-Personal Property, Type of Property Number 24, fails to note the location of hundreds of millions of Florida MVRs, in addition to customer lists or compilations containing personally identifiable information as defined in 11 U.S.C. § 101 (41A).

87.     In a response to an FOIA request from Attorney Joseph H. Malley, Creditor's Counsel to the Florida Highway Safety and Motor Vehicles Department, Representative Michael Sarvis responded:

> "From our Accounting Department, we found the following the following checks that were processed for "Electronic Data" that was sent to KMB Statistics.  The dollar amount also includes a $4.50 charge for the FTP process.  So, if you deduct the $4.50 from the check amount, it will represent the number of records that were sent to them.  The cost of the records is $0.01 per record. For example, if the dollar amount is $9,326.88, then subtract $4.50 = $9,322.38 X .01 = 932,238 records."

88.     Limiting our analysis to the last year Blank obtained Florida MVRs, (KMB's agreement with Florida was terminated on May 14, 2012.), an estimation of  Blank's cost for the MVRs was in excess of $82,500.00, interestingly enough, the Debtor spent almost $29,000 in one month, emphasis added. The MVRs obtained from Florida alone for one year was in excess of 82 million. Such information was provided within the FOIA response as follows:

$9,203.31     3/15/11
$9,058.08     6/27/11
$7,515.72     8/30/11

$2,976.58     9/30/11
$2,644.27     10/12/11
$3,599.76     11/30/11
$6,935.63     2/14/12
$6,563.90     2/23/12
$6,564.90     3/1/12
$14,393.43    4/12/12
$14,152.07    5/9/12

89.  Bankruptcy Code § § 727(a)(3) provides that:

    (a) The court shall grant the debtor a discharge, unless

    . . .

    (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

90.     The Debtor claims within the debtor's Statement of Financial Affairs that the Motor Vehicle Records, placed in her care, custody and control, allegedly no longer exist, including the hundreds of millions of Florida Motor Vehicle Records.

91.     The Debtor, in her operation of these two businesses, concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained.

92.     By virtue of the foregoing, the Creditors hereby move the Court to dismiss the Debtor's bankruptcy petition pursuant to 11 U.S. Code § 727(a)(3).

**H.     The Debtor's Petition Should be Dismissed for fraud, Pursuant to 11 U.S.C. § 727(a)(4)(A)**

93.    The Debtor knowingly and fraudulently, in or in connection with the obtainment

from the State of Texas Motor Vehicle Department of Plaintiff's motor vehicle records, made a

false oath or account, in that she represented within the contract to obtain the MVRs, qualified

pursuant to DPPA.

94.    Bankruptcy Code § 727(a)(4)(A) provides that:

(a)    The court shall grant the debtor a discharge, unless
---
(4) the debtor knowingly and fraudulently, in or in connection with the case
--
(A) made a false oath or account

By virtue of the foregoing, the Creditors hereby move the Court to dismiss the Debtor's
bankruptcy petition pursuant to 11 U.S. Code § 727(a)(4)(A)

95.    The Debtor knowingly and fraudulently, in or in connection with the case, made a

false claim, in that the Debtor represented in the Statement of Financial Affairs attached to his

Petition that a claim existed for 1/3 of a $600.000.00 debt with Compact Information Systems

Inc. The debtor failed in the Statement of Financial Affairs attached to the Debtor's Petition to

provide the required information about the nature of this debt, notice of whether this is a pending

litigation, identify the remaining persons and or entities that have a claimed right to the

remaining 2/3 of the debt, or $400,000.00, confirm that the entities that have a claimed right to

the remaining 2/3 of the debt, or $400,000.00 are not the Debtor's alter-ego corporations.

96.    By virtue of the foregoing, the Creditors hereby move the Court to dismiss the

Debtor's bankruptcy petition pursuant to 11 U.S. Code § 727(a)(4)(A).

**I.    The Debtor's Petition Should be Dismissed for Fraud, Pursuant to 11 U.S.C.
    § 727(a)(4)(C)**

97.    Debtor contracted with State Motor Vehicle Departments, including but not

limited to Texas and Florida State Motor Vehicle Departments, obtained Personal Identifying

Information ("Pii"), albeit "property", as defined within the Driver's Privacy Protection Act (18 U.S.C. §§ 2721-2725) ("DPPA") and 11 U.S.C. § 101(41 (A)) of state residents, including Plaintiffs, by use of a statement in writing (State Motor Vehicle Department Contract), claiming a DPPA permissible use, which was materially false. The Debtor knowingly and fraudulently, in or in connection with the case, gave offered and received, property (creditor's MVRs).

98.     Bankruptcy Code § 727(a)(4)(C) provides that:

(a) The court shall grant the debtor a discharge, unless
---
(4) the debtor knowingly and fraudulently, in or in connection with the case
--
(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act;

99.     By virtue of the Debtor's false representations and omissions, and the oath he took concerning the veracity of his submissions, the Debtor's discharge should be denied under Bankruptcy Code § 727(a)(4)(C).

## IV.  CLAIM RELIEF ALLEGATIONS

### COUNT I
### NON-DISCHARGEABILITY OF PLAINTIFF'S DEBT UNDER SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE

100.    Plaintiffs incorporate by reference and re-alleges all paragraphs previously alleged herein.

101.    Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

1.     A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—


(2)  for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --
. . . .

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

102.    *Debtor* contracted with State Motor Vehicle Departments, including but not limited to Texas and Florida State Motor Vehicle Departments, and *obtained* Personal Identifying Information ("Pii"), albeit "*property*", as defined within the Driver's Privacy Protection Act (18 U.S.C. §§ 2721-2725) ("DPPA") and 11 U.S.C. § 101(41 (A))  of state residents, including Plaintiffs, under false pretenses and actual fraud, by claiming a DPPA permissible use.

103.    All or part of the debt owed to plaintiff, as evidenced by the allegations against the Debtor within the Class Action, is non-dischargeable as it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code § § 523(a)(2)(A).

104.    By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code § 523(a)(2)(A).

## COUNT II

## NON-DISCHARGEABILITY OF PLAINTIFF'S DEBT UNDER SECTION 523(a)(2)(B) OF THE BANKRUPTCY CODE

105.    Plaintiffs incorporate by reference and re-alleges all paragraphs previously alleged herein.

106.    Bankruptcy Code § 523(a)(2)(B) provides, in relevant part, that:

(a)    A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(2)  for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --
. . . .

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

107.    Debtor contracted with State Motor Vehicle Departments, including but not limited to Texas and Florida State Motor Vehicle Departments, obtained Personal Identifying Information ("Pii"), albeit "property", as defined within the Driver's Privacy Protection Act (18 U.S.C. §§ 2721-2725) ("DPPA") and 11 U.S.C. § 101(41 (A)) of state residents, including Plaintiffs, by use of a statement in writing (State Motor Vehicle Department Contract), claiming a DPPA permissible use, which was materially false. The creditor reasonably relied, when they provided their Pii to state motor vehicle departments, that their Pii would be safe and not provided to persons and/or entities that did not have a DPPA permissible use; however the Debtor published creditor's property (Pii) by re-disclosing the creditor's Pii to third parties that failed to have a DPPA permissible use.

108.    All or part of the debt owed to plaintiff, as evidenced by the allegations against the Debtor within the Class Action, is non-dischargeable as it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code § § 523(a)(2)(B).

109.    By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code § 523(a)(2)(B).

### COUNT III

### NON-DISCHARGEABILITY OF PLAINTIFF'S DEBT UNDER SECTION 523(a)(4) OF THE BANKRUPTCY CODE

110.     Plaintiffs incorporate by reference and re-alleges all paragraphs previously alleged herein.

111.     Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

(a)     A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
. . .

(4)  for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

112.     Debtor contracted with State Motor Vehicle Departments, including but not limited to Texas and Florida State Motor Vehicle Departments, in order to obtain Personal Identifying Information ("Pii"), albeit "property", as defined within the Driver's Privacy Protection Act (18 U.S.C. §§ 2721-2725) ("DPPA") and 11 U.S.C. § 101(41 (A)) of state residents, including the creditors. The State Motor Vehicle Department Contracts that the Debtor entered into, and the DPPA  placed the Debtor in a fiduciary capacity while the MVRs were in the Debtor's care, custody and control.  Debtor committed fraud while acting in a fiduciary capacity by permitting the unauthorized obtainment, use and re-disclosure of the creditor's MVRs.

113.     All or part of the debt owed to plaintiff, as evidenced by the allegations against the  Debtor within the Class Action, is non-dischargeable as it is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny within the meaning of Bankruptcy Code § 523(a)(6).

114.     By virtue of the foregoing, the Debtor's discharge should be denied under

Bankruptcy Code § 523(a)(4).

## COUNT IV

### NON-DISCHARGEABILITY OF PLAINTIFF'S DEBT UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE

115.     Plaintiffs incorporate by reference and re-alleges all paragraphs previously

alleged herein.

116.    Bankruptcy Code § 523(a)(6) provides, in relevant part, that:

> (a)      A discharge under section 727, 1141, 1228(a), 1228(b) or
> 1328(b) of this title does not discharge an individual debtor from any
> debt—
> . . .
>
> (6) or willful and malicious injury by the debtor to another entity or
> to the property of another entity . . .

117.     Debtor contracted with State Motor Vehicle Departments, including but not

limited to Texas and Florida State Motor Vehicle Departments, in order to obtain Personal

Identifying Information ("Pii"), albeit "property", as defined within the Driver's Privacy

Protection Act (18 U.S.C. §§ 2721-2725) ("DPPA") and 11 U.S.C. § 101(41 (A)) of state

residents, including Plaintiffs.   Debtor caused willful and malicious injury to another entity,

namely creditor, and to the property of another entity when the Debtor re-disclosed the creditor's

MVRs to third parties.

118.     All or part of the debt owed to plaintiff, as evidenced by the allegations against

the  Debtor within the Class Action, is non-dischargeable as it is a debt for willful and malicious

injury caused by the Debtor within the meaning of Bankruptcy Code §

523(a)(6).

119.    By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code § 523(a)(6).

## COUNT V

## NON-DISCHARGEABILITY OF PLAINTIFF'S DEBT UNDER SECTION 523(a)(7) OF THE BANKRUPTCY CODE

120.    Plaintiffs incorporate by reference and re-alleges all paragraphs previously alleged herein.

121.    Bankruptcy Code § 523(a)(7) provides, in relevant part, that:

(a)    A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
. . .

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;

122.    Debtor violated 18 U.S.C. § 2723 (a) which states," Penalties, Criminal Fine- A person who knowingly violates this chapter shall be fined under this title." (The jurisdiction of the DPPA is the United States Department of Justice.), and also violated State laws related to DPPA, including but not limited to Texas, Section 730.015. PENALTY FOR FALSE REPRESENTATION. Debtor is liable to pay these governmental entities a fine and/or penalty. Texas State Motor Vehicle Department notified Debtor within three (3) years, sending correspondence to the Debtor in January 2013, that the Debtor continued to violate the DPPA).

123.    Most courts hold that judicial fines and penalties are nondischargeable even if payable to a private litigant as long as the fine was levied to vindicate the dignity and authority

of the court. See In re Allison, 176 B.R. 60 (S.D. Fla. 1994) ("it is enough that the fine or

penalty, although made payable to a party, be awarded to vindicate the dignity and authority of

the court"); In re Winn, 92 B.R. 938 (Bankr. M.D. Fla. 1988) (stating that the fact that a fine is

not payable to a governmental unit is not necessarily determinative if the fine is payable for the

benefit of a governmental unit); In re Gedeon, 31 B.R. 942 (Bankr. D. Colo.1983) (finding

nondischargeable a civil contempt fine even though payable to an individual plaintiff); In re

Marini, 28 B.R. 262(Bankr. E.D.N.Y. 1983) (finding nondischargeable a contempt fine levied

primarily to uphold the dignity of the court, even though the fine was to be paid directly to the

plaintiff).

124.    All or part of the debt owed to plaintiff, as evidenced by the allegations against

the  Debtor within the Class Action, is non-dischargeable as it is a debt for willful and malicious

injury caused by the Debtor within the meaning of Bankruptcy Code § 523(a)(7).

125.    By virtue of the foregoing, the Debtor's discharge should be denied under

Bankruptcy Code § 523(a)(7).

## COUNT VI
## OBJECTION TO DEBTOR'S DISCHARGE UNDER
## SECTION 727(a)(3) OF THE BANKRUPTCY CODE

126. Plaintiffs incorporate by reference and re-alleges all paragraphs previously alleged

herein.

127.    Bankruptcy Code § § 727(a)(3) provides that:

(a)    The court shall grant the debtor a discharge, unless

. . .

 (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or
preserve any recorded information, including books, documents, records, and
papers, from which the debtor's financial condition or business transactions

42

might be ascertained, unless such act or failure to act was justified under all of
the circumstances of the case;

128.    The Debtor, in the operation of the Debtor's businesses: KMB Statistics L.L.C.,
and Data Solutions of America Inc. operated these businesses as her alter egos, seeking to shield
herself from personal liability while at the same time using funds of these businesses for personal
purposes.

129.    The Debtor, in the operation of KMB Statistics L.L.C., and Data Solutions of
America Inc., obtained Motor Vehicle Records from State Motor Vehicle Departments,
including but not limited to, the State of Texas and Florida.

130.    The Debtor claims within the debtor's Statement of Financial Affairs that the
Motor Vehicle Records, placed in her care, custody and control, no longer exist.

131.    The Debtor, in her operation of these two businesses, concealed, destroyed,
mutilated, falsified, or failed to keep or preserve any recorded information, including books,
documents, records, and papers, from which the Debtor's financial condition or business
transactions might be ascertained.

132.    By virtue of the foregoing, the Debtor's discharge should be denied under
Bankruptcy Code § 727(a)(3).

**COUNT VII**
**OBJECTION TO DEBTOR'S DISCHARGE UNDER**
**SECTION 727(a)(4)(A) OF THE BANKRUPTCY CODE**

133.    Plaintiffs incorporate by reference and re-alleges all paragraphs previously
alleged herein.

134.    Bankruptcy Code § 727(a)(4)(A) provides that:

(a)     The court shall grant the debtor a discharge, unless
---

> (4)    the debtor knowingly and fraudulently, in or in connection with
> the case --
>  (A)    made a false oath or account

135.    The Debtor knowingly and fraudulently, in or in connection with the obtainment

from the State of Texas Motor Vehicle Department of Plaintiff's motor vehicle records, made a

false oath or account, in that she represented within the contract to obtain the MVRs, qualified

pursuant to DPPA.

136.    By virtue of the foregoing, the Debtor's discharge should be denied under

Bankruptcy Bankruptcy Code § 727(a)(4)(A).

**COUNT VIII**
**OBJECTION TO DEBTOR'S DISCHARGE UNDER**
**SECTION 727(a)(4)(B) OF THE BANKRUPTCY CODE**

137.    Plaintiffs incorporate by reference and re-alleges all paragraphs previously

alleged herein.

138.    Bankruptcy Code § 727(a)(4)(A) provides that:

(a) The court shall grant the debtor a discharge, unless
---
(4) the debtor knowingly and fraudulently, in or in connection with the case --

(B) presented or used a false claim;

139.    The Debtor knowingly and fraudulently, in or in connection with the case, made a

false claim, in that the Debtor represented in the Statement of Financial Affairs attached to his

Petition that a claim existed for 1/3 of a $600.000.00 debt with Compact Information Systems

Inc. The debtor failed in the Statement of Financial Affairs attached to the Debtor's Petition to

provide the required information about the nature of this debt, notice of whether this is a pending

litigation, identify the remaining persons and or entities that have a claimed right to the

remaining 2/3 of the debt, or $400,000.00, confirm that the entities that have a claimed right to

the remaining 2/3 of the debt, or $400,000.00 are not the Debtor's alter-ego corporations.

140.    By virtue of the foregoing, the Debtor's discharge should be denied under

Bankruptcy Code § 727(a)(4)(B).

## COUNT IX
## OBJECTION TO DEBTOR'S DISCHARGE UNDER
## SECTION 727(a)(4)(C) OF THE BANKRUPTCY CODE

141.    Plaintiffs incorporate by reference and re-alleges all paragraphs previously

alleged herein.

142.    Bankruptcy Code § 727(a)(4)(C) provides that:

> (a) The court shall grant the debtor a discharge, unless
> ---
> (4) the debtor knowingly and fraudulently, in or in connection with the
> case --
>
> (C) gave, offered, received, or attempted to obtain money, property, or advantage,
> or a promise of money, property, or advantage, for acting or forbearing to act;

143.    Debtor contracted with State Motor Vehicle Departments, including but not

limited to Texas and Florida State Motor Vehicle Departments, obtained Personal Identifying

Information ("Pii"), albeit "property", as defined within the Driver's Privacy Protection Act (18

U.S.C. §§ 2721-2725) ("DPPA") and 11 U.S.C. § 101(41 (A)) of state residents, including

Plaintiffs, by use of a statement in writing (State Motor Vehicle Department Contract), claiming

a DPPA permissible use, which was materially false. The Debtor knowingly and fraudulently, in

or in connection with the case, gave offered and received, property (creditor's MVRs).

144.    By virtue of the Debtor's false representations and omissions, and the oath he took

concerning the veracity of his submissions, the Debtor's discharge should be denied under

Bankruptcy Code § 727(a)(4)(C).

**WHEREFORE**, Plaintiffs demand judgment against Debtor and request the following relief:

1.       An order granting Plaintiffs motion for application of Fed. R. Bank P. 7023;

2.       A Declaratory ruling that Plaintiff's DPPA Claims against KMB Statistics L.L.C. and Data Solutions Of America Inc. are not part of the Debtor's Estate.

3.       An order sustaining the objections of the Plaintiffs and the Class to Blank's discharge under 11 U.S.C. § 727, and denying Blank a bankruptcy discharge;

4.       An order sanctioning Blank in favor of Plaintiffs and the Class to the extent that Blank spoliated records and evidence relevant to the DPPA claims of Plaintiffs and the other Class members against Blank and others; and

5.       Such other and further relief as this Court may deem appropriate.

Dated: October 19, 2015                          /s/ Richard M. Dauval
                                                 Richard M. Dauval (Florida Bar No. 664081)
                                                 J. Andrew Meyer (Florida Bar No. 056766)
                                                 Leavengood, Dauval, Boyle & Meyer, P.A.
                                                 3900 First Street North, Suite #100,
                                                 St. Petersburg, FL 33703
                                                 Tel: (727) 362-4959   Fax: (727) 327-3305
                                                 ameyer@leavenlaw.com

                                                 Joseph H. Malley   (Pro Hac Vice Pending)
                                                 Texas Bar No. 12865900
                                                 Law Offices of Jospeh H. Malley, P.C.
                                                 1045 North Zang Boulevard
                                                 Dallas, Texas 75208
                                                 Tel: (214) 943-6100
                                                 Fax: (214) 943-6170
                                                 Malleylaw@gmail.com

                                                 Ethan Preston     (Pro Hac Vice Pending)
                                                 Texas Bar No. 24091084
                                                 Preston Law Offices
                                                 4054 McKinney Avenue, Suite 310
                                                 Dallas, Texas 75204
                                                 Tel: (972) 564-8340
                                                 Fax: (866) 509-1197
                                                 ep@eplaw.us

                                                 *Attorneys for Plaintiffs Toby Cross and Arthur
                                                 Lopez, individually and on behalf of a class of
                                                 similarly situated individuals*