**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

In re ELIZABETH MARIE BLANK,

_____Debtor._____/

TOBY CROSS and ARTHUR LOPEZ,
individuals, on their own behalf and on
behalf of all others similarly situated,

   Plaintiffs,

  v.

ELIZABETH MARIE BLANK

_____Defendant._____/

Bankruptcy No. 9:15-bk-07321-FMD

The Honorable Caryl E. Delano

Adversary Proceeding No. 9:15-ap-00926-FMD

**FIRST AMENDED ADVERSARY
COMPLAINT**

   This case arises under *In re Blank*, Case No. 15-07321, a voluntary petition under Chapter 7 filed in this Court on July 16, 2015 ("Bankruptcy Case"). Plaintiff Toby Cross ("Cross") and Arthur Lopez ("Lopez") (collectively, "Plaintiffs"), by their attorneys, make this Complaint against Defendant Elizabeth Blank ("Blank" or "Debtor"). Plaintiffs' allegations as to themselves and their own actions, as set forth herein, are based upon their personal knowledge, and all other allegations are based upon information and belief pursuant to the investigations of counsel. Based upon such investigations, Plaintiffs believe that substantial evidentiary support exists for the allegations herein, or that such allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery. Plaintiffs brought their complaint against Blank in *Doe v. Compact Information Systems, Inc.*, Case No.3:13-cv-05013-M-BH in the United States District Court for the Northern District of Texas on December 27, 2014.

# I.    INTRODUCTION

1.     This is a class action arising under Federal Rule of Civil Procedure 23 and Federal Rule of Bankruptcy Procedure 7023. Plaintiffs' claims against Blank arise from her involvement in marketing schemes which systematically violated the Driver's Privacy Protection Act (18 U.S.C. §§ 2721-2725) ("DPPA"). Blank owned and operated two Florida corporate entities, named KMB Statistics, LLC ("KMB") and Data Solutions of America, Inc. ("DSOA") (collectively, "Blank Entities"). Blank was the manager and apparently the sole member of KMB. Blank was president and apparently the sole officer and owner of DSOA.

2.     Blank acted independently, in concert with KMB and DSOA, and using KMB and DSOA as agents, and co-conspirators, knowingly authorized, directed, ratified, approved, acquiesced, or participated, in conduct which violated the DPPA by:

    a.     Obtaining, directly or indirectly, motor vehicle records of Plaintiffs and the other class members maintained by the Texas State Motor Vehicle Department, for purposes that violate the DPPA;

    b.     Using, processing, and re-disclosing, the motor vehicle records of Plaintiffs and the other class members for purposes that violate the DPPA;

    c.     Reselling the motor vehicle records of Plaintiffs and the other class members for purposes that violate DPPA; and

    d.     Failing to maintain adequate records required under the DPPA and/or spoliating such records in violation of Blank's duty to preserve documents which arose once, e.g., she received notice of the *Doe v. Compact Information Systems, Inc.*, No. 3:13-cv-05013-M-BH lawsuit.

In particular, Blank and the Blank Entities violated the DPPA by selling personal information from MVRs primarily to Compact Information Systems, Inc. ("CIS") and other persons (whose names are not all known to Plaintiffs) for the purposes of direct marketing ("Direct Marketers").

3.     Plaintiffs bring a class action against Blank on behalf of a class of persons whose motor vehicle records were improperly acquired by or on behalf of Blank. Plaintiffs seek remedies

including actual damages, "but not less than liquidated damages in the amount of $2,500," punitive damages for willful and reckless disregard of the DPPA, reasonable attorneys' fees and other litigation costs reasonably incurred, and such preliminary and equitable relief as the Court determines to be appropriate, pursuant to and consistent with 18 U.S.C. § 2724(b).

4.    Plaintiffs seek to exclude the foregoing claims from Blank's discharge under 11 U.S.C. § 523(a)(6). Blank obtained and disclosed Plaintiffs' and the other Class members' personal information from MVRs in violation of the DPPA. These acts were intentional, and they necessarily injured those privacy interests which Congress intended the DPPA to protect. In addition or the alternative, Blank intended (or knew her conduct was substantially certain) to injure those privacy interests which Congress intended the DPPA to protect when she committed those acts. Hence, Blank's DPPA violations caused willful and malicious injury under the meaning of 11 U.S.C. § 523(a)(6). Section 523(a)(6) does not require that Blank acted with personal malevolence to Plaintiffs or the other Class members.

5.    Likewise, the DPPA required Blank to maintain records identifying persons to whom she or the Blank Entities disclosed Plaintiffs' and the other Class members' personal information from MVRs for five years, and she had a duty under the common law to preserve those documents (as evidence relevant to Plaintiffs' claims) after that. On information and belief, Plaintiffs allege Blank (and/or the Blank Entities) spoliated such documents. Blank's spoliation was intentional, and it necessarily injured Plaintiffs and the other Class members by deliberately destroying the evidence that they need to prove their case against Blank and others. In addition or the alternative, Blank intended (or knew her conduct was substantially certain) to injure Plaintiffs and the other Class members and their ability prove their case against Blank and others when she committed such spoliation. Hence, Blank's spoliation caused willful and malicious injury under

the meaning of 11 U.S.C. § 523(a)(6).

6.    Lastly, Plaintiffs allege that Blank's spoliation concealed, destroyed, mutilated, falsified, or deleted evidence relevant to both Plaintiffs' claims and to Blank's material business transactions, and therefore object to Blank's discharge under 11 U.S.C. § 727(a)(3) on the basis that Blank has unjustifiably "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained."

## II.    PARTIES

7.    Plaintiff Toby Cross is an individual residing in Anderson County, Texas, and is a licensed and registered driver in the State of Texas. Cross's motor vehicle records ("MVRs") include his name and address, and the VIN number, type, make, model, year, and license plate number of his automobile. Cross's MVRs were obtained by the Blank (KMB and DSOA), and ultimately used without his express consent.

8.    Plaintiff Arthur Lopez is an individual residing in Dallas County, Texas, and is a licensed and registered driver in the State of Texas. Lopez's MVRs include his name and address, and the VIN number, type, make, model, year, and license plate number of his automobile. Lopez's MVRs were obtained by Blank (KMB and DSOA), and ultimately used without his express consent.

9.    Defendant Elizabeth M. Blank is an individual, and on information and belief, a resident of Florida during the Class Period. Blank is the Debtor in the Bankruptcy Case, and her bankruptcy petition lists her residence as 913 SW 52nd Street, Cape Coral, Florida 33904, and on that basis Plaintiffs allege that Blank resides at such address.

### III.    JURISDICTION AND VENUE

10.    Plaintiffs assert federal claims under the DPPA. As a federal court, this Court has subject matter jurisdiction over those claims under 28 U.S.C. § 1331 and 18 U.S.C. § 2724(a).

11.    As a bankruptcy court, the Court also has subject matter jurisdiction because this is also an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure to object to Debtor's discharge under 11 U.S.C. § 727(a)(3) and to exclude Plaintiffs' claims from the discharge under 11 U.S.C. § 523(a)(6). Hence, this is a core proceeding; the Court has subject matter jurisdiction under 28 U.S.C. § 157(b)(2)(I) and (J).

12.    This Court has personal jurisdiction over the Debtor under Florida Statute § section 48.193 because, inter alia, the acts alleged herein were committed in the state of Florida, including carrying on the business of the Blank Entities and violating the DPPA. Venue before this Court is also proper under 28 U.S.C. § 1409.

### IV.    THE DRIVER'S PRIVACY PROTECTION ACT

13.    The DPPA regulates personal information stored in states' MVR databases. The DPPA defines "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name address, telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3). The DPPA defines a "motor vehicle record" as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1).

14.    The DPPA generally prohibits obtaining personal information from MVRs outside a narrowlylimited set of circumstances. "It shall be unlawful for any person knowingly to obtain

or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2722(a). Relatedly, the DPPA prohibits false representations in the course of obtaining personal information from State Departments of Motor Vehicles ("DMV"),"It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record." 18 U.S.C. § 2722(b).

15.     The DPPA provides one mandatory exception and fourteen permissible exceptions (permissible purposes) to section 2722(a)'s general prohibition on disclosure of personal information in MVRs which allows for the limited disclosure of personal information to an authorized recipient.An authorized recipient of personal information (except a recipient under subsection (b)(11) or (12)) may resell or re-disclose the information only for a use permitted under subsection (b) (but not for uses under subsection (b)(11) or (12)). 18 U.S.C. § 2721(c). The phrase "authorized recipient" is construed narrowly: it means "any individual or entity, or their agent, that obtains personal information from DMV records for one of the permissible uses under section 2721(b)." *Wiles v. Worldwide Info., Inc.*, 809 F. Supp. 2d 1059, 1071 (W.D. Mo. 2011).

16.     The DPPA was amended in 1999 amending the "opt-out" provisions found in sections 2721(b)(11) and (12). *See* Pub. L. No. 106-69, 113 Stat. 986 (Oct. 9, 1999). Personal information in MVRs could still be disclosed in certain circumstances for bulk distribution for surveys, marketing, or solicitation, but only if individuals are provided an opportunity, in a clear and conspicuous manner, to deny such use, 18 U.S.C. § 2721(b)(12).

17.     An authorized recipientthat acted as a "reseller"is legally obligated to abide bythe same responsibility (and liability) for that information as the state. Hence, the DPPA imposes duties on resellers to ensure that authorized recipients of information from MVRs use that information consistent with section 2721(b). "Based on the language of the statute, its structure,

and its legislative history, . . . the DPPA imposes a duty on resellers to exercise reasonable care in responding to requests for personal information drawn from motor vehicle records." *Gordon v. Softech Int'l, Inc.*, 726 F.3d 42, 53 (2d Cir. 2013).

18.     In this case, it is particularly important that the DPPA also requires that resellers of personal information from MVRs to keep, for five years, records identifying persons to who received such personal information and the permissible purpose for so doing. 18 U.S.C. § 2721(c).

19.     Finally, the DPPA created a private right of action in federal court against a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter[.]" 18 U.S.C. § 2724(a). In a DPPA action,

> [t]he court may award—
>
> > (1)     actual damages, but not less than liquidated damages in the amount of $2,500;
> > (2)     punitive damages upon proof of willful or reckless disregard of the law;
> > (3)     reasonable attorneys' fees and other litigation costs reasonably incurred; and
> > (4)     such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2724. In *Kehoe v. Federal Bank & Trust*, the Eleventh Circuit held, based on the unambiguous language of the DPPA, that proof of any actual damages is not necessary in order to recover under the DPPA's liquidated damages provision. 421 F.3d 1209, 1212 (11th Cir. 2005) (citing *Doe v. Chao*, 540 U.S. 614 (2004)).

## V.     BLANK VIOLATED THE DRIVER PRIVACY PROTECTION ACT

### A.     <u>Blank was involved exclusively in the direct marketing business for 20 years and used KMB and DSOA in order to obtain, use, and re-disclose MVRs for direct marketing solicitation without express consent</u>

17.     Blank owned and operated DSOA, a Florida corporation involved exclusively in the direct marketing business which acted as a direct market service provider specializing in direct

mail targeted lists and provided assistance to direct marketing entities. While DSOA's website (http://www.dsoai.com) is no longer active, its description of DSOA's business is available from an online archive:

> "The Data Solutions of America team brings together over 20 years of direct marketing experience and list selection experience. We work directly with Marketing Companies, Mail Shops and Advertising Agencies offering competitive rates and access to the most current and accurate data this industry has to offer.Data is not just data! All databases are not created equally. Each source has certain nuances based on their compilation methods and database management that can significantly affect your mailing campaign."

Internet    Archive:    Wayback    Machine,    *Data    Solutions    of    America,    Inc.*,    *at* http://www.web.archive.org/web/20101114010314/http://www.dsoai.com/index.html        (Nov. 2014).

18.    Blank owned and operated KMB, a Florida corporation involved exclusively in the direct marketing business, acting as a direct market service provider specializing in direct mail targeted lists, and providing assistance to direct marketing entities. Blank used KMB in order to obtain state motor vehicle record databases which were then provided to DSOA for re-disclosure to direct marketing entitiesfor solicitation purposes without express consent.

19.    In February 2011, CIS reportedly purchased the assets of KMB and DSOA, acquiring DSOA's "vehicle database," hiring KMB's and DSOA's  staff, and also hiring Blank as the Vice President of CIS's Vehicle Division. CIS rebranded DSOA's "National Auto List" as its "Compact National Auto List" ("CNAL"). After the acquisition, KMB informed the Texas DMV to transfer MVRs to CIS' address: 7120 185th Ave NW, Suite 150, Redmond, Washington 98052. Additionally, in March 2011, CIS began making monthly payments directly to the Texas DMV under Blank's (KMB's) contract with the Texas DMV until November 2011, when the contract was terminated due to DPPA violations.

20. Blank remained as DSOA's President until Blank filed for corporate dissolution on September 28, 2012. Blank remained as KMB's President until Blank filed for corporate dissolution on September 27, 2013. Reportedly, Blank remained associated with CIS until January 2014, the period Plaintiffs filed the Texas Class Action.

**B.** **Blank (KMB) obtained, used, and re-disclosed Personal Identifying Information (PII) from Texas MVRs for direct marketing and solicitation without express consent**

21. Blank incorporated, owned, and operated KMB and DSOA for the express purpose of obtaining personal information from MVRs and reselling that information for direct marketing purposes. Blank used both KMB and DSOA to obtain and sell personal information from MVRs to Direct Marketers for direct solicitation without express consent.

22. On March 18, 2009, Blank, as President of KMB, entered into a purchase agreement with the Texas Department of Motor Vehicles to obtain access to the Texas MVR database on a continuous and repeated basis. In KMB's contract with the Texas DMV, Blank certified that KMB had three statutory permissible purposes to obtain personal information in the Texas MVRs but in actuality Blank and KMB had no such permissible purposes, to wit:

(1) Blank and KMB asserted the "normal course of business" purpose under 18 U.S.C. § 2721(b)(3). The "normal course of business" exception under 18 U.S.C. § 2721(b)(3) applies only where a business uses MVRs to verify the accuracy of information that an individual provides to that business. *See* 18 U.S.C. § 2721(b)(3)(A). This permissible purpose does not apply because neither KMB nor Blank obtained any information from Plaintiffs, the other Class members, or names of the persons in the test records which KMB or Blank needed to verify. The Direct Marketers' solicitations sent to and received by Plaintiffs, the other Class members, and the names in the test records are totally inconsistent with the "normal course of business" permissible purpose;

(2) Blank and KMB asserted the "research activities" purpose under 18 U.S.C. § 2721(b)(5). The "research activities" exception under 18 U.S.C. § 2721(b)(5) applies only when "the personal information is not published, re-disclosed, or used to contact individuals." 18 U.S.C. § 2721(b)(5). This

permissible purpose does not apply because the personal information Plaintiffs, the other Class members, and the names of the persons in the test records which KMB or Blank obtained were re-disclosed and used to contact those persons. The Direct Marketers' solicitations sent to and received by Plaintiffs, the other Class members, and the names in the test records are totally inconsistent with the "research activities" permissible purpose;

(3)    Blank and KMB asserted the insurance-related purpose under 18 U.S.C. § 2721(b)(6). The insurance-related purpose exception under 18 U.S.C. § 2721(b)(6) applies only where an insurer, insurance support organization, or self-insured entity, uses the information "in connection with claims investigation activities, antifraud activities, rating or underwriting." 18 U.S.C. § 2721(b)(6). Blank, KMB, DSOA, and CIS are not insurers, insurance support organization, or self-insured entities. The Direct Marketers' solicitations sent to and received by Plaintiffs, the other Class members, and the names in the test records are totally inconsistent with claims investigation activities, antifraud activities, rating or underwriting.

**C.**     **The State of Texas DMVimplemented compliance controls to investigate any improper use of Motor Vehicle Records, found Blank (KMB) in violation of the DPPA, and terminated Blank's (KMB's) access to Texas Motor Vehicle Records**

23.     The Texas DMV is responsible for the protection of personal information in the MVR database. In an effort to monitor appropriate compliance with its use, the Texas DMV implemented a procedure to "salt" the MVR database with "test records": records of fictitious persons that the Texas DMV inserted into its responses to weekly bulk requestors of MVR data, without notifying the bulk requestors. The test records had fictitious names andvehicle VINs—but the real addresses of the State of Texas Department of Motor Vehicle representatives involved in the covert operation.  Because these test records did not relate to any real person and the fictitious names from the test records could only be acquired from the Texas MVRs, any direct marketing mailed to a test record would reveal misuse of the Texas MVR database—and a corresponding violation of the DPPA. By salting the MVR database with different test records, the Texas DMV could correlate direct marketing sent to a specific text record to a particular bulk requestor. In a

response to an Open Records Act request from Plaintiffs' counsel, the State of Texas DMV representative Diane Dobson stated:

>"[T]he Texas Department of Motor Vehicles (TxDMV) – Vehicle Titles and Registration (VTR) takes its responsibility to protect the personal information contained in the Registration and Title System (RTS) database and prevent any misuse very seriously. As a result of amendments made to the DPPA by the 106th U.S. Congress, the State of Texas acted to insure the privacy of personal information contained in the RTS by "opting out" all motor vehicle owners. This means the TxDMV-VTR does not release personal information from the motor vehicle registration and titling records unless such release is required or permitted by law. The TxDMV-VTR strictly prohibits the use of the personal information for marketing or soliciting motor vehicles owners.Although there are vendors who purchase motor vehicle records data from the TxDMV, the use of this data is regulated by law and strict contractual guidelines. If a vendor sells or uses the data in violation of the DPPA, their contract is terminated and they are prohibited from purchasing the data in the future. To identify vendors who may be using or selling the data which is then misused, the Division implemented a means to verify potential misuse. Periodically, the Department creates a series of "test records". Each test record or records is/are unique to a single vendor. Typically, a different record is inserted into the weekly file a vendor receives for three to four consecutive weeks. Vendors are not advised of this internal check and balance…"

24.     Based upon this covert operation, the Texas DMV terminated its agreement with Blank (KMB) on November 30, 2011 for violations of the DPPA. As a result of the continued violations of the DPPA after the initial termination letter was sent, the Texas DMV sent Blank (KMB), a "cease and desist" letter, dated January 31, 2013, referencing activity occurring in 2012 and continuing into 2013. In a response to an Open Records Act request from Plaintiffs' counsel, the State of Texas DMV representative Diane Dobson stated:

>"To determine whether a vendor is using the information contained in the data from the Registration and Title System database in accordance with the DPPA; the terms of the contract and the permitted use the vendor attests to, the Division randomly inserts test records into the files provided to vendors.Attached are three solicitations that were made from three separate test records that were included in the data provided to KMB Statistics.  These solicitations were are in direct violation of the terms of the contract and resulted in the termination thereof.  When the first solicitation was received the contract was immediately terminated.  Upon receipt of subsequent solicitations, KMB Statistics was sent a decease and desist letter…."

25.     The Direct Marketers' solicitations letters sent to the "salted" test record recipients in the Texas MVR database provided dispositive proof that Blank and the Blank Entities obtained personal information from the Texas MVR database and then Blank (through the Blank Entities and/or CIS) resold that information to others for the purpose of direct marketing and solicitation without express consent. Because the test records contain fictitious names that the Texas DMV only provided to Blank, the names and addresses used by the direct marketing at issue could have only derived from Blank's access to the Texas MVR database.

26.     Plaintiffs received direct marketing solicitations letters identical to those sent to the State DMV investigators.

27.     On information and belief, the Texas MVRs obtained, used, and re-disclosed by Blank (via the Blank Entities) continue to be used to date, an ongoing violation of the DPPA.

### D.      Blank Willfully and Maliciously Violated the DPPA

28.     Blank, through KMB, violated 18 U.S.C. § 2722(a) by knowingly and intentionally obtaining personal information from the Texas MVRs in order to provide that information to DSOA, CIS, and to other direct marketing entities. Blank knew that DSOA and CIS would use that information for direct marketing to the Plaintiffs and the other Class members without their express consent, and did not have any permissible purpose to obtain that information under the DPPA. Blank, through KMB, violated 18 U.S.C. § 2722(a) by knowingly and intentionally disclosing personal information in the Texas MVRs to DSOA, CIS, and to other Direct Marketers.

29.     Blank, through DSOA, violated 18 U.S.C. § 2722(a) by knowingly and intentionally obtaining personal information from KMB (which information KMB obtained from the Texas MVRs) for purposes of direct marketing to the Plaintiffs and the other Class members without their express consent, and did not have any permissible purpose to obtain that information

under the DPPA. Blank, through DSOA, violated 18 U.S.C. § 2722(a) by knowingly and intentionally disclosing personal information in the Texas and Florida MVRs to CIS and other direct marketing entities.

30.    Blank knew she was obtaining and disclosing personal information from the Texas MVRs to use for direct marketing purposes without express consent (in violation of the DPPA) when she disclosed such information to DSOA and other Direct Marketers.  In the alternative or in addition, Plaintiffs further allege that, given the self-evident nature of DSOA and CIS's businesses, that given a cursory review of the Direct Marketers' websites, marketing materials, or even their communications with Blank, the Blank Entities, and/or CIS would have informed Blank the personal information which KMB obtained from the Texas  MVRs would be used for direct marketing purposes without express consent (which, again, violated the DPPA), and that Blank acted at least recklessly and/or with willful blindness when she resold such information.

31.    Blank and the Blank Entities had an ongoing business relationship with CIS through which Blank knew CIS was a direct marketing service provider. In particular, Blank acted as the Vice President of CIS's Vehicle Division during the class period. Because Blank held her positions at KMB, DSOA, and CIS concurrently, and because of CIS's relationship with the Direct Marketers, she had sufficient information to know that the Direct Marketers obtained the personal information (which KMB derived from the Texas MVRs) for the purpose of direct marketing to the Plaintiffs and the other Class members without their express consent, and that the Direct Marketers did not have any permissible purpose to obtain that information under the DPPA.

32.    Blank also violated 18 U.S.C. § 2722(b) by misrepresenting her purpose for acquiring the personal information in Texas's MVRs. Blank certified that KMB had three permissible purposes to obtain personal information in the Texas MVRs: (1) "normal course of

business" under 18 U.S.C. § 2721(b)(3); (2) "research activities" under 18 U.S.C. § 2721(b)(5); and (3) insurance related purposes under 18 U.S.C. § 2721(b)(6). In fact, Blank, (KMB), did not use the personal information in the Texas MVRs for any of these purposes.

33.     Blank knew the foregoing conduct violated 18 U.S.C. § 2722(a) because she signed contracts with the Texas DMVs which spelled out the DPPA's provisions and prohibitions.

34.     Blank's conduct necessarily injured those privacy interests which Congress intended the DPPA to protect. In addition or the alternative, Blank intended to injure those privacy interests which Congress intended the DPPA to protect. In addition or the alternative, Blank intended knew her conduct was substantially certain to injure those privacy interests which Congress intended the DPPA to protect.

## VI.    CLASS ACTION ALLEGATIONS

35.     **Class Definition:** Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek certification of the follow class:

> All natural persons in Texas whose personal information was found in the motor vehicle records maintained by the Texas Department of Motor Vehicles, and which Blank, individually, and/or as representative of KMB Statistics, LLC, and/or Data Solutions of America, Inc., obtained from such motor vehicle records, since March 18, 2009 through the final disposition of this or any related actions (the "Class Period"), for purposes that included direct marketing and solicitation, without their express consent (the "Class").

Members of the Class may be notified of the pendency of this action by email, mail, and/or supplemented (if deemed necessary or appropriate by the Court) by published notice. Members of the Class can be readily identified through Blank's records and the Texas MVRs.

36.     **Numerosity:** The exact number of Class member is unknown and is not available to Plaintiffs at this time, but such information is readily ascertainable by Defendants. However,

Plaintiffs estimate that Texas had roughly 15 million registered drivers, and that all or most of the registered drivers in Texas between 2009 and 2011 would be members of the Class.

Therefore the Class consists of millions of individuals. Individual joinder of all Class members is likely to be impracticable.

37.    **Commonality:** Common questions of fact and law exist as to all Class members. These questions are likely to drive the resolution of the litigation, and they predominate over the questions affecting only individual Class member. Identification of the individuals who qualify as a member of the Class will be sufficient to establish liability to the same. Questions common to the Class include, but are not limited to the following:

   a.   Whether Blank (individually and/or as KMB's president) obtained Class members' personal information from the Texas MVRs, as defined in 18 U.S.C. § 2725;

   b.   Whether Blank (individually and/or as KMB's president) had a permissible purpose under 18 U.S.C. § 2721(b) to obtain Class members' personal information from the Texas MVRs;

   c.   Whether Blank (individually and/or as an officer of KMB, DSOA, and/or CIS) disclosed Class members' personal information derived from the Texas MVRs to other persons;

   d.   Whether Blank (individually and/or as an officer of KMB, DSOA, and/or CIS) had a permissible purpose under 18 U.S.C. § 2721(b) to disclose Class members' personal information dervied from the Texas MVRs to such other persons;

   e.   Whether Blank's conduct was intentional;

   f.   Whether Blank's conduct necessarily injured those privacy interests which Congress intended the DPPA to protect;

   g.   Whether Blank's conduct was substantially certain to injure those privacy interests which Congress intended the DPPA to protect;

   h.   Whether Blank intended to injure those privacy interests which Congress intended the DPPA to protect;

   i.   Whether Blank spoliated evidence relevant to the claims of Plaintiffs and the other Class members or to Blank's material business transactions;

j.   Whether Blank's conduct necessarily injured the ability of Plaintiffs and the other Class members to prove their case against Blank and others;

k.   Whether Blank's conduct was substantially certain to injure the ability of Plaintiffs and the other Class members to prove their case against Blank and others;

l.   Whether Blank intended to injure the ability of Plaintiffs and the other Class members to prove their case against Blank and others;

m.   Whether the claims of Plaintiffs and the other Class members should be excepted from discharge under 11 U.S.C. § 523(a)(6);

n.   Whether Blank destroyed concealed, destroyed, mutilated, falsified, or deleted records of her material business transactions; and

o.   Whether Blank should be denied a discharge under 11 U.S.C. § 727(a)(3).

38.   **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the Class. Subject to the allegations above, Plaintiffs are not significantly different in any material way from any other members of the Class, and the relief they seeks is common to the Class.

39.   **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the other Class members; their interests do not conflict with the other Class members' interests. Plaintiffs' personal information was unlawfully obtained, disclosed, and sold for a profit, and they are ready, willing, and able, to serve as Class representatives. Plaintiffs have retained counsel competent and experienced in complex class actions, and they intend to prosecute this action vigorously, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest that might cause them not to vigorously pursue this action.

40.   **Predominance and Superiority:** The Class alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual Class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation

necessitated by Defendant's actions. It would be virtually impossible for Class members to obtain effective relief from Defendant's misconduct on an individual basis. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

41.     **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Debtor has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. Defendant's policies and practices challenged herein apply and affect members of the Class uniformly, and Plaintiffs' challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiffs.

## COUNT I
## Violations of the Driver's Privacy Protection Act, § 18 U.S.C. § 2721 et seq.

42.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

43.     As set forth herein, Blank violated the DPPA by engaging in the acts alleged in this complaint.

44.     The DPPA regulates the obtaining and disclosing of personal information gathered by State Departments of Motor Vehicles, making it unlawful for a person or organization to knowingly obtain or disclose personal information, or highly restricted personal information, contained in motor vehicle records for any purpose not specifically enumerated under §2721(b).

45.     Blank violated the DPPA by intentionally obtaining, using, re-disclosing, and reselling Plaintiffs' and Class Members' motor vehicle records without their knowledge, consent, or authorization, for purposes not specifically enumerated with the DPPA.

46.     Specifically, Plaintiffs and Class Members are "persons" within the meaning of 18 U.S.C. §2725(2).

47.     The records obtained by Blank pertaining to Plaintiffs and Class Members each constitute a "motor vehicle record"within the meaning of 18 U.S.C. §2725(1).

48.     18 U.S.C. §2725(5) "express consent" means consent in writing, including consent conveyed electronically that bears an electronic signature as defined in section 106(5) of Public Law 106–229.

49.     18 U.S.C. § 2722(b), prohibits any organization or entity from making any false representation to obtain any personal information or highly restricted personal information from an individual's motor vehicle record.

50.     18 U.S.C. § 2721(c), permits an "authorized recipient" of personal information (except for some exceptions) to resell or re-disclose the information, but only for a use permitted under 18 U.S.C. § 2721(b).

51.     Defendant Blank, individually, and as representative of KMB, were not authorized recipients of Plaintiffs' and Class Members' motor vehicle records and thereby violated 18 U.S.C. § 2721(c), by reselling or re-disclosing the information contained therein.

52.     Defendant Blank individually, and as representative of KMB, violated 18 U.S.C. § 2721(c) by re-disclosing or reselling Plaintiffs' and Class Members' information to Data Solutions of America, a non-authorized recipient.

53.     Defendant Blank individually, and as representative of Data Solutions of America

violated 18 U.S.C. § 2721(c) by re-disclosing or reselling Plaintiffs' and Class Members' information to Compact Information Systems, a non-authorized recipient.

54.     Blank, individually, and as representative of KMB and DSOA, are liable directly and/or vicariously for re-disclosure and resale to affiliated Direct Marketers, failing to use reasonable care to investigate CIS and the Direct Marketers claimed DPPA permissible uses when re-disclosing and reselling information about Plaintiffs and the Class Members from the Texas MVRs to the Direct Marketers.

55.     18 U.S.C. § 2722(b)(12) prohibits use of the motor vehicle records for bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

56.     The Direct Marketers violated 18 U.S.C. § 2722(b)(12) by obtaining, using, re-disclosing, and reselling motor vehicle records for purposes that include marketing or solicitation, without express consent of Plaintiffs. Defendant Blank, individually, and as representative of KMB, DSOA, and CIS, permitted such access intentionally, and on occasions, negligently.

57.     Blank violated 18 U.S.C. § 2721(b) by making false representations to knowingly obtain the Plaintiffs' and Class Members' motor vehicle records, directly or indirectly, for direct marketing purposes, either knowingly, or in the alternative, providing for use in marketing and solicitation of Plaintiffs and Class Members, without their express consent.

58.     Plaintiffs and the putative Class Members have suffered damages, as alleged herein, and pursuant to 18 U.S.C. § 2724(b)(1), are entitled to actual damages, but not less than liquidated damages in the amount of $2,500.00 each.

59.     Plaintiffs and the Class, pursuant to 18 U.S.C. § 2724(b), are entitled to damages in the amount of the greater of $2,500.00 or actual damages as well as punitive damages for each of

Plaintiffs and Class Members, as well as reasonable attorneys' fees.  Plaintiffs and Class Members

are also entitled to a return of Blank's profits obtained from the above-described violations.

60.    Plaintiffs and the Class, pursuant to 18 U.S.C. § 2724(b), are also entitled to

preliminary, equitable, and declaratory relief.  Unless restrained and enjoined, Blank will continue

to violate the DPPA as set forth in this complaint. Plaintiffs' and Class Members' potential remedy

at law is not adequate to compensate each of them for these inflicted and threatened injuries,

entitling Plaintiffs and Class Members to injunctive relief as provided by 18 U.S.C. § 2724(b).

61.    As a direct and proximate result of the aforesaid acts and activities of Blank,

Plaintiffs, and each of them, have been harmed.

62.    All of the acts and activities of Blank, as heretofore set out, were performed

intentionally, fraudulently, maliciously, knowingly, conspiratorially, and on occasions negligently.

63.    Plaintiffs and Class Members were damaged thereby, and seek redress thereof.

## COUNT II
**(Determination that Claims of Plaintiffs and Class Against Blank
Are Not Dischargeable Under 11 U.S.C. § 523(a)(6))**

64.    Plaintiffs incorporate by reference and reallege all paragraphs previously alleged

herein.

65.    Blank's violations of 18 U.S.C. § 2722(a) were willful and malicious under the

meaning of 11 U.S.C. § 523(a)(6).

66.    Likewise, on information and belief, Blank spoliated records and evidence relevant

to the DPPA claims of Plaintiffs and the other Class members against Blank and others which

records and evidence Blank had a duty to preserve under 18 U.S.C. § 2721(c) and the common

law duty to preserve evidence in the federal courts. To the extent Blank spoliated such records and

evidence, Plaintiffs seek sanctions against Blank personally under the federal common law.

67.     Blank was an officer and the owner of KMB and DSOA, as well as an officer of CIS. As such, Blank participated in, authorized, and directed KMB, DSOA, and CIS's DPPA violations and spoliation. To the extent she did not personally commit the acts alleged in this Complaint, the DPPA claims alleged in this Complaint and the spoliation sanctions sought in this Complaint are excluded from Debtor's discharge under traditional principles of agency and/or because she participated in the underlying conduct giving rise to the DPPA claims.

68.     Plaintiffs, on their own behalf, and behalf of the other Class members, seeks an order holding that the DPPA claims and spoliation sanctions described above are excepted and excluded from discharge pursuant to 11 U.S.C. § 523(a)(6).

## COUNT III
### (Plaintiffs and Class's Objection to Blank's Discharge Under 11 U.S.C. § 727(a))

69.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

70.     Blank (individually and/or as an officer and owner of KMB and DSOA) had an obligation to maintain records and evidence of what personal information derived from the Texas MVRs she disclosed to whom and what permissible purpose such recipients purported to have under 18 U.S.C. § 2721(c). Blank also had an obligation under the bankruptcy laws to keep and preserve records that would enable her creditors to accurately ascertain her material business transactions. Plaintiffs do not have sufficient records from Blank to determine to whom she disclosed their personal information which Blank derived from the Texas MVRs.

71.     Blank controlled KMB and DSOA. To the extent that any property containing evidence of KMB and DSOA's operations and finances has been lost or transferred, Blank was actively involved in or acquiesced to such loss or transfer, and Blank's discharge is precluded under 11 U.S.C. § 727(a)(3). There is no justification for the failure to maintain these records, nor

has Blank purported to advance any such justification.

72.     Plaintiffs, on their own behalf, and behalf of the other Class members, seek an order

denying a discharge to Blank under 11 U.S.C. § 727(a)(3).

WHEREFORE, Plaintiffs Toby Cross and Arthur Lopez, pray that the Court enter

judgment and orders in their favor and against Defendant Elizabeth Blank as follows:

a.     An order certifying the Class, directing that this case proceed as a class action, and appointing Plaintiffs and their counsel to represent the Class;

b.     Declaratory judgment against Blank, and in favor of Plaintiffs and the other members of the Class, that Blank violated the DPPA under 28 U.S.C. § 2201;

c.     Judgment against Blank, and in favor of Plaintiffs and the other members of the Class, for liquidated damages as provided by 18 U.S.C. § 2724(b)(1);

d.     Judgment against Blank, and in favor of Plaintiffs and the other members of the Class, for punitive damages as provided by 18 U.S.C. § 2724(b)(2);

e.     Preliminary and equitable relief, including an accounting of the transfer of the personal information of the Plaintiffs and the Class members, and an injunction prohibiting Blank from violating DPPA in the future as provided by 18 U.S.C. § 2724(b)(4);

f.     An order granting reasonable attorneys' fees and other litigation costs reasonably incurred under 18 U.S.C. § 2724(b)(3);

g.     An order holding that the foregoing judgments on the DPPA claims of the Plaintiffs and the Class are not dischargeable under 11 U.S.C. § 523(a)(6);

h.     An order sanctioning Blank in favor of Plaintiffs and the Class to the extent that Blank spoliated records and evidence relevant to the DPPA claims of Plaintiffs and the other Class Members against Blank and others;

i.     An order sustaining the objections of the Plaintiffs and the Class to Blank's discharge under 11 U.S.C. § 727(a)(3), and denying Blank a bankruptcy discharge; and,

j.     Such other and further relief as this Court may deem appropriate.

Dated: December 10, 2015

/s/ J. Andrew Meyer
J. Andrew Meyer (Florida Bar No. 056766)
Leavengood, Dauval, Boyle & Meyer, P.A. 3900
First Street North, Suite #100,
St. Petersburg, FL 33703
Tel: (727) 362-4959
Fax: (727) 327-3305
ameyer@leavenlaw.com

Joseph H. Malley (pro hac vice)
Law Offices of Jospeh H. Malley, P.C.
1045 North Zang Boulevard
Dallas, Texas 75208
Tel: (214) 943-6100
Fax: (214) 943-6170
malleylaw@gmail.com

Ethan Preston (pro hac vice)
Preston Law Offices
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Tel: (972) 564-8340
Fax: (866) 509-1197
ep@eplaw.us

*Attorneys for Plaintiffs Toby Cross and Arthur Lopez, individually and on behalf of a class of similarly situated individuals*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Amended Adversary Complaint was served via electronic filing in the CM/ECF system of the United States Bankruptcy Court for the Middle District of Florida, Ft. Myers Division to the parties requesting service by electronic filing.

I hereby also certify that a copy of the foregoing was served via United States Mail, first class postage prepaid, on the date of the electronic filing of this document to those individuals and entities not requesting service by electronic filing. The individuals and entities being served electronically or by mail are:

Elizabeth Marie Blank
5311 SW 9th Place
Cape Coral, Florida 33914

Jonathan M Bierfeld
Martin Law Firm PL
3701 Del Prado Boulevard
Cape Coral, Florida 33904
jonathan.bierfeld@martinlawfirm.com

*Attorney for Elizabeth Marie Blank*

/s/ J. Andrew Meyer